# EXHIBIT A

ELECTRONICALLY FILED
7/7/2014 9:41 PM
2014-L-007133
CALENDAR: U
PAGE 1 of 34
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
LAW DIVISION
CLERK DOROTHY BROWN

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| DAVID RAMSEY and | ) | |
| JARED STEGER, | ) | |
| | ) | |
| | ) | Case No. |
| Plaintiff | ) | Judge: |
| vs. | ) | |
| | ) | |
| | ) | |
| LTF Club Operations Company, | ) | |
| Inc., dba Life Time Fitness, Inc. | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT AT LAW

### PART A: INDIVIDUAL AND COLLECTIVE ACTION COMPLAINT

NOW COMES the Plaintiffs, David Ramsey and Jared Steger, individually, and on behalf of a Collective Action, pursuant to §216(b) of the Fair Labor Standards Act (hereinafter "FLSA")  the Illinois Minimum Wage Law ("IMWL"), 820 ILCSv105/1 et seq., and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS § 115/1 et seq., the Illinois Whistleblower Act ((740 ILCS 174/) Whistleblower Act) and Common Law Retaliatory Discharge against Defendant LTF Club Operations Company, Inc. dba Life Time Fitness, Inc. (hereinafter "Lifetime" and/or "Defendant") and in so doing state the following.

### NATURE OF THE ACTION

1. Defendant has become one of America's fastest growing fitness chains by deliberately and intentionally underpaying and deceiving its employees in a predatory manner which leads to excessively high turnover rate and widespread dissatisfaction with working conditions.

Specifically, Defendant has an established a pattern and practice of requiring its personal trainers to perform substantial unpaid, uncompensated and "off the clock" work designed to benefit Lifetime to the detriment of its workers and in disregard of state and federal law.

2. As such, Plaintiffs bring this action individually and as a Collective Action, under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, 207 and 216(b) to recover unpaid wages for substantial unpaid work as well as overtime work performed for which Plaintiff and members of the Collective. Plaintiffs bring claims under both Federal and state wage laws because they are entitled to be paid for all hours worked and to receive minimum wage for all hours worked and/or to receive time and half for all hours worked over forty (40) hours per week. Plaintiffs expressly state that they are not bringing any of the claims alleged herein as a class action..

3. During the relevant times described herein Defendant has established a pattern and practice of assigning or ordering work which required Plaintiffs and the Collective to work beyond forty hours but failing to "allow" such overtime work thus refusing to pay overtime wages for work accomplished for the benefit of the employer.

4. The vast majority of all work hours were not paid. Approximately 60% of Plaintiffs' hours worked for the club were unpaid, even though Plaintiffs were required to perform these services for the company. Plaintiffs were not paid for work done in connection with member assessments, mandatory meetings, and mandatory cleaning times.

5. An example of the unpaid work time is demonstrated by Mr. Ramsey's paycheck dated August 24, 2012 which covered the fifteen day pay period from August 1, 2012 through August 15, 2012. Mr. Ramsey's paystub shows gross pay and net pay of $0.00 during which period Mr.

ELECTRONICALLY FILED
7/7/2014 9:41 PM
2014-L-007133
PAGE 2 of 34

ELECTRONICALLY FILED
7/7/2014 9:41 PM
2014-L-007133
PAGE 3 of 34

Ramsey worked on location at the Lifetime Warrenville club over eighty-eight hours or eleven days of eight hours shifts.

6. During the following pay period August 16, 2012 through August 31, 2012, Mr. Ramsey's paystub shows gross earnings of $303.26 during a sixteen day pay period in which Mr. Ramsey worked in excess of eighty-eight hours or eleven eight hour shifts. Mr. Ramsey also incurred overtime during these two pay periods which also is not reflected in the paystubs or his wages.

7. Mr. Ramsey continued working for Lifetime for an additional eight full months beyond the two above pay periods documented for August, 2012 In order to view the actual hours Mr. Ramsey worked and the specific tasks he and other employees performed on an hour by hour basis, the company's online "Workday" scheduling system would need to be accessed.

8. Despite numerous efforts to rectify with management why they were not receiving any compensation for the enormous volume of work they were performing for the Warrenville Naperville club, Plaintiffs were not given any reasonable explanation and continued to not be paid for the vast amount of their job duties for the duration of their employment. Plaintiffs worked enthusiastically and had positive performance reviews and reached all goals set for them by management.

9. Additional claims are brought as Plaintiffs and members of the Collective were forced to work "off-the-clock". Employees were instructed and threatened not to use the draw system to accumulate wages as this system took draw wages from managers and paid this to employees seeking draw wages.

10. At all times relevant hereto, Plaintiffs were "employee(s)" of Defendants as defined by the IMWL, 820 ILCS 105/3(d), the FLSA, 29 U.S.C. §203(d), and the IWPCA, 820 ILCS 115/2.

3

Plaintiffs were not exempt from the minimum wage and overtime provisions of the IMWL and the FLSA.

11. At all times relevant hereto, Defendants were "employer[s]" as defined in the IMWL, 820 LLCS 105/3(c), the FLSA, 29 U.S.C. §203(d), and the IWPCA, 820 ILCS 115/2.

12. Plaintiff David Ramsey is a resident of the State of Illinois.

13. Jared Steger is a resident of the state of Illinois.

14. Lifetime is a corporation which does business in Illinois.

15. Lifetime is a personal fitness and exercise "gym."

16. Lifetime also provides personal training.

17. Personal training allows a customer/member of Lifetime fitness to perform exercise workouts with a professional fitness instructor. These trainings are one-on-one, or with a group, and the trainer provides experienced training, motivation, and educated scientific knowledge to that customer to improve his or her personal fitness.

18. David Ramsey, Jared Steger (and the Collective) were employees of Defendant.

19. The job Plaintiffs worked for Defendant as was titled "Personal Trainer" (hereinafter "trainer").

20. Upon information and belief, each location of Lifetime employed approximately 30 personal trainers; thus Lifetime employed, at any one time, several hundred to a few thousand personal trainers.

21. Further, because of the large amounts of unpaid off the clock work, the turnover of personal trainers is very high. Upon information and belief, the turnover rate of new personal trainers is approximately 40-60% in the first three months of the personal trainers' employment; thus a

ELECTRONICALLY FILED
7/7/2014 9:41 PM
2014-L-007133
PAGE 4 of 34

4

large number of personal trainers worked for Lifetime for a short time and most quit based on being forced to work off-the-clock and because of pressure not to clock in.

22. As a Personal Trainer, Plaintiffs and other trainers worked one-on-one, (and in small groups) with customers. Plaintiffs were only paid for some of these training sessions.

23. Plaintiffs and the Collective worked off-the-clock for many hours each week.

24. Often the personal trainers worked over forty hours and were not paid for all this time nor were personal trainers paid over-time for work over forty hours.

25. Plaintiffs were never paid over time, despite frequently working over forty hours. Upon accepting employment with the company and completely a mandatory five days of training in Vernon Hills, Il, when the trainers returned to their clubs for their initial working hours they were told that they could not clock-in for more than forty hours, but they could work more than forty hours. It was also explained that it was not advised to clock in for full-time hours until the trainer had filled his schedule with paid training clients.

26. Trainers were further explained by management that the individual goals set for them each month in revenue were critical to meet in order to maintain employment. Each week the assistant personal training department managers conducted a one on one meeting with each trainer to review excel spreadsheets for sales projections. These meetings were not paid. The purpose for these meetings was to apply pressure and make trainers know they had to work until their monthly goals were met. In addition to the one on one meetings there were two weekly personal training staff meetings also which were not paid to any employee.

27. Defendant was fully aware, or should have been aware of, Plaintiffs and other personal trainers off the clock work and/or overtime work and that such time was not fully paid and/or not paid at statutory rate of time and a half. Mr. Ramsey asked multiple questions about the legality

ELECTRONICALLY FILED
7/7/2014 9:41 PM
2014-L-007133
PAGE 5 of 34

ELECTRONICALLY FILED
7/7/2014 9:41 PM
2014-L-007133
PAGE 6 of 34

of these policies of not paying trainers for the majority of their hours and his assistant manager Jason Hall, who is now Personal Training Director in Romeoville explained that he had no answers and he himself not only questioned the legality of the draw system which took money from managers and paid them to trainers, but he actually expressed to Mr. Ramsey that he wished someone would challenge the draw system legally. Mr. Hall expressed displeasure and distrust with the legality of having his wages taken aware by an employee the club hired. This draw system as it is constructed by Lifetime equates to a Ponzi type sheme which causes the managers to have to put pressure on the trainers to do off-the-clock work since their own paychecks are garnished by the company if trainers incur any draw pay.

28. Plaintiffs and other trainer's off-the-clock tasks could be grouped into two different areas:

a. Marketing of services, products, and sales of additional training workouts for the benefit of Defendant.

b. Compellation of paperwork, reports, and meetings about clients, all of which focused on benefits to the Defendant and increased sales.

29. Plaintiffs and other similarly situated trainers provided these additional services to Lifetime, thus Defendant was fully aware Plaintiff and other trainers were performing these tasks off the clock, and that Defendant was receiving the benefits of these labors.

30. Further Lifetime provided the paperwork, forms, and computers on which the forms were completed, thus demonstrating awareness that the trainers were completing the paperwork, and receiving no compensation for this work.

31. Plaintiffs and other similarly situated trainers also worked off the clock in a marketing capacity. Trainers were asked frequently each day to set up "table times" promoting products such as heart rate monitors, supplements, and other fitness gear.

32. Plaintiffs and other similarly situated trainers would be required, allowed and encouraged to work off the clock marketing the services and training workouts of Defendant.

33. Defendant was fully aware of these marketing efforts, and aware that Plaintiffs received little or no compensation for this work time.

34. Plaintiffs and other similarly situated trainers reported their work time on company computers by documenting their schedules for each day. Between 50% to 60% of work time for most trainers was non-client hours. Trainers received no pay from the company except when training clients who have paid for their sessions. This means that for the average trainer twenty to twenty-four hours per week was uncompensated. Plaintiffs and other similarly situated trainers were ordered to only report work with client time, regardless of the amount of time worked, if that time was "approved". Yet Defendant was ordering, requiring and gauging performance of the Plaintiff and other similarly situated trainers by tasks which clearly required additional work time beyond that "allowed".

35. This report of non-workout hours was termed "other hours worked".

36. When asked about the large amounts of time worked but not paid, Plaintiff Ramsey's fitness manager stated he would not be paid for that time because its "part of your job".

37. Plaintiffs and other similarly situated trainers received emails from the fitness manager about client files not being done which state in part; "this is part of your job, I will take action, if it is not fixed". The Fitness manager was fully aware that the files were completed off the clock but ordered Plaintiff and other similarly situated trainers to complete the client files, knowing that the work was off the clock.

38. Plaintiffs and other similarly situated trainers were not paid for large amounts of work time before and after the training sessions.

ELECTRONICALLY FILED
7/7/2014 9:41 PM
2014-L-007133
PAGE 7 of 34

ELECTRONICALLY FILED
7/7/2014 9:41 PM
2014-L-007133
PAGE 8 of 34

39. The post-training time involved work which directly benefited the Defendant, in that Plaintiffs and other similarly situated trainers were ordered, required and/or allowed to maintain the extensive files for the customers.

40. Plaintiffs and other similarly situated trainers would complete Lifetime paperwork which reported to Lifetime and the client the workout progress.

41. These client files were extensive; one client file would be more than ten pages and well over 100 in some cases. The file included various documents such a workout plan, nutrition plan, supplemental recommendations, a client discovery form including a series of questions and answers, computer recommendations, and resting metabolic rate and exercise metabolic tests.

42. At all relevant times, it was Lifetime's policy and practice to require extensive off the clock work to establish the file for each client.

43. With each additional workout with a client, Lifetime would require Plaintiffs and the collective to complet additional "off the clock" paperwork.

44. Most, if not all, of this paperwork was completed off the clock by Plaintiffs and other similarly situated trainers.

45. Plaintiffs and other similarly situated trainers were not only required to give assessments to new members of the gym, but also were encouraged to meet and greet existing members and attempt to sell products and services.

46. In these assessments, Plaintiffs were required to contact the member by email or phone and have a ninety minute meeting to discuss supplements, training, nutrition, health history, motivation. Plaintiffs did up to thirty assessments per week, all unpaid.

47. In addition to the initial ninety minute assessment, Plaintiffs were required to meet with the clients, often multiple times, to follow up on their progress even if they were not working or paying for a trainer. These meetings were also unpaid.

48. Additionally Plaintiffs and other similarly situated trainers had to complete the required paperwork off the clock on the Defendant computer system.

49. Thus Plaintiffs and other similarly situated trainers often had to access the computer to complete the files.

50. In advance of work outs, Plaintiffs and other similarly situated trainers would have to review files and paperwork in preparation for work outs, plan future work outs, write out the work out plans, review of manuals, books, and videos. All this pre-workout time was off the clock.

51. The paperwork completed by Plaintiffs and other similarly situated personal trainers for a single client often required thirty minutes to one hour of work, all off the clock.

52. The time to complete paperwork for each client would be multiplied by each client the trainer had; thus, if trainer had twenty clients then this paperwork, alone, could entail ten to twenty hours of work per week, all this work time was performed off the clock.

53. Plaintiffs and other similarly situated trainers would also have to field questions about clients' status by management. Plaintiffs and other similarly situated trainers would be questioned in the workout areas and between sessions when the Plaintiff and other similarly situated trainers were clearly not being paid for these meetings. These questions were additional unpaid work for the benefit of Defendant with the knowledge of the Defendant that the benefit was received while the employees were not being paid.

ELECTRONICALLY FILED
7/7/2014 9:41 PM
2014-L-007133
PAGE 9 of 34

54. Plaintiffs and other similarly situated trainers also were frequently asked to run downstairs to meet and greet new members who had just purchased a membership. Management made this a requirement for employees and was aware Plaintiff's were not getting paid for this effort.

55. The meetings held by management one on one with employees were termed Business Plan Meetings", and required twenty to forty minutes each meeting and were off-the-clock for Plaintiffs and other similarly situated trainers.

56. Plaintiffs and other similarly situated trainers in advance of the meeting would have to write up a review of sessions and the Plaintiffs and other similarly situated trainers marketing efforts; again all this time was off-the-clock.

ELECTRONICALLY FILED
7/7/2014 9:41 PM
2014-L-007133
PAGE 10 of 34

57. These business planning meetings were ongoing performance reviews and the manager would provide additional goals if Plaintiffs and other similarly situated trainers did not achieve sufficient success/sales.

58. The goals and requirements were strongly enforced by management with announcements that every month Defendant would fire the two lowest rated trainers.

59. Some of the goals and requirements of the Defendant clearly required further off the clock work such as seeking other clients from contacts outside of the club to become members and purchase personal training sessions.

60. Plaintiffs excelled at their jobs and exceeded their sales goals each month during their employment at the Warrenville location.

61. The required off the clock marketing efforts of Plaintiffs and other similarly situated trainers included goals and requirements to sell merchandise, heart rate monitors, merchandise sales, and nutritional supplement. This category of sales was strongly stressed and was categorized as "Results Based Culture" or "RBC." Competitions were created and rewards were given in an

effort to divert the trainer's attention away from the wages not being paid. After the contests, the management would not pay the promised award and often claim that a certain level of sales needed to be exceeded for the prize to be awarded after the contest was over. This was a major factor in many the high trainer turnover rate.

62. The work done selling merchandise and unpaid.

63. Additionally, management warned Plaintiffs about the draw system. Plaintiffs' managers, Jason Hall and Colin Yording, warned Plaintiffs not to take a draw because the draw would be taking money out of the managers' pockets. The managers and other trainers recommended Plaintiffs never clock in if Plaintiffs weren't receiving health insurance benefits. Another trainer, Jeff Pisczek, was fired on or about March 1, 2013 because he was not willing to work without health insurance. Before his firing he was offered to continue employment without clocking in, but he refused stating he needed to have healthcare. He was then notified they were forced to terminate him because of the draw system through which he had collected wages that had been taken out of his manager's paychecks.

64. Many trainers did not clock in at all. There were a few who did. Both Jarred Fischer and Jeff Pieszek were taking draw and were fired within five or six months for being in draw. Others were warned to get out of draw quickly and were fired if they did not.

65. Additionally, Stacy Charabowski and Katie Rosengren who were trainers, were sent text messages by their Fitness manager Andrew Ryan telling them to stop clocking in because it was coming out of manager's paychecks.

66. Trainers were given also given call lists to call inactive members and were not paid for the time spent working on this project.

ELECTRONICALLY FILED
7/7/2014 9:41 PM
2014-L-007133
PAGE 11 of 34

ELECTRONICALLY FILED
7/7/2014 9:41 PM
2014-L-007133
PAGE 12 of 34

67. Plaintiff trainers were told not to clock in to avoid taking pay away from managers. But many later in their employment found out if they didn't clock in they were then not eligible for benefits.

68. Plaintiff trainer Jared Steger reached seventy to ninety hours of work per week, while Plaintiff trainer David Ramsey worked fifty to sixty hours each week. However, the trainers were told by Andrew Becker and other managers to stop clocking in after 40 hours even if they were training paying clients. When Mr. Steger began to clock in because he desired to achieve pay for when he was working seventy to ninety hours, the manager would manually change the employees time log so the time clock would only reflect forty hours a week. These manual changes were done by Andrew Becker, fitness manager, between December, 2012 and May 1, 2013.

69. Trainer meetings sometimes coincided with employees' off days. Plaintiff trainers were also told by numerous managers that if they did not attend, they would be written up or being fired. These threats came from both Andrew Becker, the Fitness Director, and Travis Christopherson, the General Manager.

70. Plaintiffs were not only not paid for overtime work but were also not paid their wages for many straight hours, including weeks in which they worked but received no pay or minimal pay.

71. Plaintiff bring claims for relief for violation of the FLSA as a Collective action pursuant to Section 16(b) of the FLSA (29 U.S.C. § 216(b)), on behalf of all employees of Lifetime who were, are, or will be employed by Lifetime during the period of three (3) years prior to the date of commencement of this action through the date of judgment in this action, who were not compensated at one-and-one-half times the regular rate of pay for all work performed in excess of forty (40) hours per work week and or minimum wages.

12

72. FLSA violation claims are brought and maintained as an "opt-in" Collective Action pursuant to § 16(b) of FLSA, 29 U.S.C. § 216(b), for all FLSA claims asserted by the Plaintiffs, since the FLSA claims of the Plaintiffs are similar to the FLSA claims of all personal training employees employed by Defendant.

73. Defendant is liable for improperly compensating Plaintiffs and the Collective under the FLSA, and as such notice should be sent to the FLSA Collective. There are numerous similarly situated current and former employees of Lifetime who have been denied the overtime premium. The similarly situated employees are known to Defendant and are readily identifiable through Defendant's records.

**Lifetime Policies and Procedures and Compensation Practices Require Personal Trainers to Work Off the Clock.**

74. Plaintiffs and the Collective were employed by Lifetime as personal trainers who were required to complete a set of tasks which required work beyond forty hours, but for which Defendant failed to pay overtime for all time worked and/or Plaintiffs and the Collective were required to work as personal trainers and not paid for all time worked and/or not paid the federal minimum wage.

75. Defendant required personal trainer employees to complete a number of tasks such as maintaining client files, reporting client exercise progress, and conducting marketing efforts but did not pay for most of this time.

76. The Defendant's unlawful conduct was and is not inadvertent, de minimis, isolated or sporadic, but widespread, repeated and part of a pattern and practice of conduct affecting all Defendant's employees.

77. Defendant consented, was knowledgeable of, and required the Plaintiff to work off-the-clock.

ELECTRONICALLY FILED
7/7/2014 9:41 PM
2014-L-007133
PAGE 13 of 34

13

78. Plaintiffs were paid on an hourly pay rate and classified as "non-exempt" employees by Defendant.

79. Defendant required employees to work in excess of forty (40) hours per week but failed to pay all compensation due and owed including straight time and overtime.

## FACTS TO SUPPORT PLAINTIFF'S CLAIMS TO OVERTIME COMPENSATION BASED ON "OFF-THE-CLOCK" WORK

80. Plaintiffs are owed wages and compensation as alleged elsewhere in this complaint including pay for all hours worked and overtime pay at time-and-a-half of Plaintiff's regular rate of pay.

81. Plaintiffs were not „allowed" to work beyond forty hours, but Defendant was aware that Plaintiffs were working off the clock.

82. Despite being aware that Plaintiffs were performing work, which was permitted, expected and demanded, Plaintiffs did not receive overtime wages, other than an occasional overtime payment.

83. This is a FLSA violation because the Plaintiffs worked beyond forty (40) hours, thus Plaintiffs are owed time-and-half of his regular pay for ALL hours beyond 40.

84. Further that by forcing him to work off the clock, this is a violation of the Plaintiff's rights under FLSA as he was not paid at time-and-half during these hours and rather is paid nothing for this work time.

85. Further this also a violation of the Plaintiff's rights under Illinois Minimum Wage law and Illinois over-time wage law and IWPCA as an individual claim.

86. The FLSA defines the "regular rate" as all remuneration for employment paid to or on behalf of the employee, before any deductions from wages are made. (See 29 U.S.C. §207(e); 29 C.F.R. §778.109.)

ELECTRONICALLY FILED
7/7/2014 9:41 PM
2014-L-007133
PAGE 14 of 34

**Lifetime's Actions were Willful, Knowledgeable and/or Had Reckless Disregard for FLSA**
**Regulations**

87. Lifetime required and permitted Plaintiffs and the FLSA Collective, to work more than 40 hours in a week. Lifetime did not pay Plaintiffs and the FLSA Collective for all of these overtime hours which should have been paid at the rate of one-and-a-half times the regular rate of pay or straight time hours in which the total work hours did not exceed forty (40) hours per week and/or not that Plaintiff and collective were not paid federal minimum wage for all hours worked.

88. Lifetime's unlawful conduct has been uniform, widespread, repeated and consistent.

89. Lifetime's willful violations are especially demonstrated by their knowledge that its employees were working off-the-clock and/or that it assigned quotas far beyond the ability of the employees to attain these goals.

90. All allegations and claims alleged herein should be read in the alternative, to the extent such an interpretation is necessitated by law and permitted under Federal Law, Illinois Law and other state laws.

91. All allegations plead herein are plead with personal knowledge as to those allegations to which Plaintiffs have such knowledge and based upon "information and belief" as to all other allegations.

**COUNT I Under the Illinois Minimum Wage Law "IMWL"**

92. Plaintiffs reallege and incorporates by reference all the preceding paragraphs, as if fully set forth herein.

93. Plaintiffs were not paid their wages for a significant amount of work for which they expected to be paid and that was performed in the course of their employment with Lifetime including weeks that Plaintiffs' worked and that were completely unpaid.

ELECTRONICALLY FILED
7/7/2014 9:41 PM
2014-L-007133
PAGE 15 of 34

94. Plaintiffs were an employee of the Defendant pursuant to the IMWL.

95. Plaintiffs were employed by Lifetime as a Personal Trainers.

96. It is and was at all relevant times a policy of Lifetime to require employees to work off the clock.

97. It is a policy, procedure and job requirement of Defendant Lifetime that its employees are to work off the clock

98. The Defendant's unlawful conduct was and is not inadvertent, de minimis, isolated or sporadic, but widespread, repeated and part of a pattern and practice of conduct affecting all Defendant's employees.

99. Defendant consented, was knowledgeable of and required the Plaintiffs to work off the clock.

100. Defendant derived benefits by requiring Plaintiffs to work off the clock.

101. As a result of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial.

102. Illinois law contains a three-year statute of limitations regardless of whether the violation was willful. 820 ILCS 105/12(a).

WHEREFORE, Plaintiffs, individually and on behalf of the FLSA Collective, pray for the following relief:

A. That, at the earliest possible time, the Plaintiffs be allowed to give notice of this Collective action, or that the Court issue such notice, to all persons who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of Court-supervised notice, been employed by the Defendant and required to work off the clock. Such notice shall inform them that this civil action has been filed,

ELECTRONICALLY FILED
7/7/2014 9:41 PM
2014-L-007133
PAGE 16 of 34

of the nature of the action, and of their right to join in this lawsuit if they believe they were not paid all wages for work performed.

B. Unpaid wages and liquidated damages pursuant to 29 U.S.C. § 201 et seq. and the supporting Illinois Department of Labor and United States Department of Labor regulations;

C. Unpaid federal minimum wages and federal overtime wages pursuant to FLSA;

D. Compensation originating from Lifetime's company policies, contractual obligations and ERISA requirements owed as a result of unpaid overtime wages;

E. An injunction requiring Defendant to pay all statutorily-required wages;

F. Certification of this case as a Collective action;

G. Designation of the Plaintiff as representative of the Collective;

H. Issuance of a Declaratory Judgment that the practices complained of in this Complaint are unlawful;

I. Attorneys' fees and costs of this action in accordance with FLSA ;

J. Liquidated damages;

K. Consequential damages;

L. and costs of this action; and

M. Such other relief as this Court shall deem just and proper.

## COUNT II Under Illinois Wage Payment and Collection Act "IWPCA"

103. Plaintiffs were not paid their wages for a significant amount of work for which they expected to be paid and that was performed in the course of their employment with Lifetime including weeks that Plaintiffs' worked and that were completely unpaid.

104. At all relevant times herein, Defendants were "employer[s]" as defined in the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 et seq., and Plaintiffs and similarly situated persons

ELECTRONICALLY FILED
7/7/2014 9:41 PM
2014-L-007133
PAGE 17 of 34

were "employee[s]" within the meaning of that Act. Defendants were at all times aware of their

obligation to pay its hourly employees for all time they worked, and are aware of the

compensation actually paid to Plaintiffs and the class.

105. Defendants agreed to compensate its employees, including Plaintiffs, for all time worked.

106. However, Defendants instituted practices that resulted in its employees working

certain time without compensation. Some employees were instructed by their supervisors to

'punch out,' but to continue to work off the clock; some employees were unknowingly clocked

out by a manager while they worked; other employees had accrued work time reduced by

supervisors. In any event, the result was that Defendants failed to compensate Plaintiffs and the

class of hourly employees for all the time they worked.

107. Plaintiffs reallege and incorporates by reference all the preceding paragraphs, as if fully set

forth herein.

108. Plaintiffs were employed by Lifetime.

109. It is and was at all relevant times a policy of Lifetime to require employees to work off the

clock.

110. The Defendant's unlawful conduct was and is not inadvertent, de minimis, isolated or

sporadic, but widespread, repeated and part of a pattern and practice of conduct affecting all

Defendant's employees.

111. Defendant forced Plaintiffs to work "off-the-clock".

112. The Defendant's unlawful conduct was and is not inadvertent, de minimis, isolated or

sporadic, but widespread, repeated and part of a pattern and practice.

ELECTRONICALLY FILED
7/7/2014 9:41 PM
2014-L-007133
PAGE 18 of 34

113. Plaintiffs were under the control and direction of the owner of the Defendant and/or its agents during the period of the Plaintiffs' employment under their contracts of service and in fact.

114. Plaintiffs were not independent contractors, rather they were employees of the Defendant by oral agreement and/or written contract.

115. Plaintiffs' employment was in the usual course of business for which such service is performed.

116. The Defendant is an "employer" under the terms of the IWPCA section 2.

117. In accordance with IWPCA, an employer is also defined as: "any officer of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation".

ELECTRONICALLY FILED
7/7/2014 9:41 PM
2014-L-007133
PAGE 19 of 34

WHEREFORE, Plaintiffs, individually and on behalf of the FLSA Collective, pray for the following relief:

A. That, at the earliest possible time, the Plaintiffs be allowed to give notice of this Collective action, or that the Court issue such notice, to all persons who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of Court-supervised notice, been employed by the Defendant and required to work off the clock. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join in this lawsuit if they believe they were not paid all wages for work performed.

B. Unpaid wages and liquidated damages pursuant to 29 U.S.C. § 201 et seq. and the supporting Illinois Department of Labor and United States Department of Labor regulations;

C. Unpaid federal minimum wages and federal overtime wages pursuant to FLSA;

D. Compensation originating from Lifetime's company policies, contractual obligations and ERISA requirements owed as a result of unpaid overtime wages;

E. An injunction requiring Defendant to pay all statutorily-required wages;

F. Certification of this case as a Collective action;

G. Designation of the Plaintiffs as representative of the Collective;

H. Issuance of a Declaratory Judgment that the practices complained of in this Complaint are unlawful;

I. Attorneys' fees and costs of this action in accordance with FLSA ;

J. Liquidated damages;

K. Consequential damages;

L. and costs of this action; and

M. Such other relief as this Court shall deem just and proper.

**COUNT III (On Behalf of Plaintiff and All Opt-In Employees Against Defendant Lifetime as a Collective Action (FLSA Claims, 29 U.S.C. § 201 et seq.)**

118. Plaintiffs reallege and incorporate by reference all the preceding paragraphs, as if fully set forth herein.

119. The Collective Action claims include all pled claims found in this complaint which fall within the coverage of FLSA.

120. The Collective claims include all pled claims found in this complaint which fall within the coverage of FLSA and Plaintiffs do not limit the Collective to any one particular claim, including but not limited to work off the clock.

ELECTRONICALLY FILED
7/7/2014 9:41 PM
2014-L-007133
PAGE 20 of 34

121. At all relevant times, Defendant Lifetime has been, and continues to be, an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, Defendant has employed, and continues to employ, "employee[s]," including the Plaintiff, and each of the members of the FLSA Opt-Ins, that have been, and continue to be, engaged in interstate "commerce" within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, Defendant has had gross operating revenues in excess of Five Hundred Thousand and no/100 Dollars ($500,000.00).

122. At all relevant times, Defendant has engaged, and continue to engage, in a willful policy, pattern, or practice of requiring their employees, including the Plaintiff and members of the prospective FLSA Collective, to work in excess of forty (40) hours per week without compensating such employees for work performed at the applicable rate, further that Defendant forced Plaintiff and other employees to work "off-the-clock" and/or failed to pay all hours worked and/or failed to pay the Collective the federal minimum wage.

123. At all relevant times, the work performed by Personal Trainers including the Plaintiff and prospective FLSA Opt-Ins, employed at Defendant were, and continue to be, required or permitted by Defendant, for the benefit of Defendants, directly related to such employees' principal employment with Defendant, and as an integral and indispensable part of such employees" employment of Defendant.

124. As a result of the Defendant's willful failure to record or compensate its employees, including Plaintiff and members of the prospective FLSA Collective, employed by Defendant for all hours worked, Defendant has violated, and continues to violate, the maximum hours provision of the FLSA, 29 U.S.C. § 207(a)(1), and § 215(a).

ELECTRONICALLY FILED
7/7/2014 9:41 PM
2014-L-007133
PAGE 21 of 34

125. As a result of the Defendant's willful failure to record, report, credit, and/or compensate its employees employed by Defendant, including the Plaintiff and members of the prospective FLSA Collective, Defendant has failed to make, keep and preserve records with respect to each of their employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, including 29 U.S.C. §§211(c) and §§ 215(a).

126. The foregoing conduct, as alleged, violated the FLSA, 29 U.S.C. §§ 201 et seq.

127. Plaintiff, on behalf of himself and all FLSA Opt-Ins, seek damages in the amount of their respective unpaid compensation, plus liquidated damages, as provided by the FLSA, 29 U.S.C. § 216(b), and such other legal and equitable relief as the Court deems just and proper.

128. Plaintiff, on behalf of himself and all FLSA Opt-Ins, seek recovery of attorneys" fees and costs of action to be paid by Defendant, as provided by the FLSA, 29 U.S.C. § 216(b).

129. Plaintiffs have consented to be a party to this action, pursuant to 29 U.S.C. § 216(b).

130. At all times relevant to this action, Plaintiff and all FLSA Opt-Ins were employed by Defendant within the meaning of the FLSA.

131. At all times relevant to this action, Plaintiffs and all FLSA Opt-Ins were engaged in commerce and/or the production of goods for commerce and/or Defendant were an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

132. Due to Defendant's FLSA violations, Plaintiffs and all FLSA Opt-Ins are entitled to recover from Defendant their unpaid compensation, an additional equal amount as liquidated damages, additional liquidated damages for unreasonably delayed payment of wages, reasonable attorneys" fees, and costs of the action, pursuant to 29 U.S.C. § 216(b)§ 6 of the Fair Labor Standards Act, 29 U.S.C.A. § 206, 9 FCA title 29, § 206, provides that every employer shall pay

ELECTRONICALLY FILED
7/7/2014 9:41 PM
2014-L-007133
PAGE 22 of 34

to each of his employees who is engaged in interstate or foreign commerce or in the production of goods for such commerce, wages at specified hourly rates.

WHEREFORE, Plaintiffs, individually and on behalf of the FLSA Collective, pray for the following relief:

A. That, at the earliest possible time, the Plaintiffs be allowed to give notice of this Collective action, or that the Court issue such notice, to all persons who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of Court-supervised notice, been employed by the Defendant and required to work off the clock. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join in this lawsuit if they believe they were not paid all wages for work performed.

B. Unpaid wages and liquidated damages pursuant to 29 U.S.C. § 201 et seq. and the supporting Illinois Department of Labor and United States Department of Labor regulations;

C. Unpaid federal minimum wages and federal overtime wages pursuant to FLSA;

D. Compensation originating from Lifetime's company policies, contractual obligations and ERISA requirements owed as a result of unpaid overtime wages;

E. An injunction requiring Defendant to pay all statutorily-required wages;

F. Certification of this case as a Collective action;

G. Designation of the Plaintiffs as representative of the Collective;

H. Issuance of a Declaratory Judgment that the practices complained of in this Complaint are unlawful;

I. Attorneys' fees and costs of this action in accordance with FLSA ;

J. Liquidated damages;

ELECTRONICALLY FILED
7/7/2014 9:41 PM
2014-L-007133
PAGE 23 of 34

23

K. Consequential damages;

L. and costs of this action; and

M. Such other relief as this Court shall deem just and proper.

## COUNT IV (Quantum Meruit)

133. Plaintiffs reallege and incorporates by reference all the preceding paragraphs, as if fully set forth herein.

134. Lifetime, at all times material to this Complaint, was conscious and aware that Plaintiffs' performed work off the clock.

135. Lifetime is liable to Plaintiffs under quantum meruit for all work performed by Plaintiffs for Lifetime.

WHEREFORE, Plaintiffs pray for judgment against Defendant for an amount in excess of $80,000.00 each for back pay, with interest, front pay, past and future lost benefits, wages, bonuses, raises, compensation for damages sustained as a result of the violation, punitive damages, litigation costs, expert witness fees, attorneys' fees, and any other relief that this Honorable Court deems appropriate and just.

## COUNT V (UNJUST ENRICHMENT)

136. Plaintiffs reallege and incorporates by reference all the preceding paragraphs, as if fully set forth herein.

137. Defendant was enriched As a result of Plaintiffs' unpaid work and at the expense of Plaintiffs.

138. Equity and Good Conscience dictate that Plaintiff's be paid accordingly.

139. Defendant was at all relevant times, by and through its agents and employees, aware of the benefit conferred by plaintiffs.

ELECTRONICALLY FILED
7/7/2014 9:41 PM
2014-L-007133
PAGE 24 of 34

140. Defendant was, at all relevant times, by and through its agents and employees, aware that Plaintiffs would reasonably expect to be reasonably compensated for their work.

WHEREFORE, Plaintiffs pray for judgment against Defendant for an amount in excess of $80,000.00 each for back pay, with interest, front pay, past and future lost benefits, wages, bonuses, raises, compensation for damages sustained as a result of the violation, punitive damages, litigation costs, expert witness fees, attorneys' fees, and any other relief that this Honorable Court deems appropriate and just.

# PART B: WHISTLEBLOWING/RETALIATION

## ALLEGATIONS COMMON TO COUNTS SIX AND SEVEN

ELECTRONICALLY FILED
7/7/2014 9:41 PM
2014-L-007133
PAGE 25 of 34

141. Plaintiff, Jared Steger, (hereinafter "Plaintiff" or "Mr. Steger) begin working for Defendant on or about August 5, 2011 as a Personal Trainer for Defendant's clients in Warrenville, Illinois.

142. Plaintiff, David Ramsey, (hereinafter "Plaintiff" or "Mr. Ramsey") began working for Defendant on or about June 30, 2012 as a Personal Trainer for Defendant's clients in Warrenville, Illinois.

143. Defendant is a corporation engaged in the business of providing services related to health and fitness by and through its agents and employees.

144. On or about December 30, 2012, a personal training client of Mr. Ramsey, Jill Weaver, purchased personal training for one month.

145. Ms. Weaver was charged two more additional months after her contract had ended.

146.     On or about January 29, 2013, Mr. Ramsey brought the fraudulent charges to the

attention of Fitness Manager, Andrew Becker, who stated he would put a stop to these charges.

These charges were not stopped.

147.     On or about February 25, 2013, it was brought to the attention of Mr. Ramsey that Ms.

Weaver had once again been charged for personal training that was not authorized. Again Mr.

Becker reported he would stop billing Ms. Weaver for services that were not requested or

authorized.

148.     On or about March 11, 2013, a client of Mr. Steger, Jason Gull, informed Plaintiff that he

had been charged for unrequested personal training sessions after his contract had ended. Mr.

Stager brought this incorrect charge to the attention of Fitness Manager Andrew Becker. This

charge was not reversed.

149.     On or about March 23, 2013, Mr. Ramsey became aware his client, Donna

Weilgolewski, was doubled charged during March, 2013 for personal training. Ms. Weilgolewski

was charged twice on separate days for the same contract. This contract was not authorized for

credit card transactions.  One charge was done by check and the other charge was completed

through her credit card, which was on file for alternate reasons.

150.     Mr. Ramsey brought this credit fraud and deceptive practices to the attention of

Management every single day from March 26, 2013 through May 1, 2013.  Mr. Ramsey advised

management that many employees were very uncomfortable with the new policy created by

Andrew Becker.  Specifically, Becker's policy was for the trainers to give credit card numbers of

all training clients to Mr. Becker.  The previous procedure had been for the trainer to run the

payments themselves and not provide credit card numbers to the Fitness manager.

ELECTRONICALLY FILED
7/7/2014 9:41 PM
2014-L-007133
PAGE 26 of 34

151. On or around December 17, 2012, Becker took a commission away from Ramsey which Ramsey was fully entitled to and gave it to a female trainer, Megan DiMonda with whom it was rumored he had a personal relationship. In retaliation for Ramsey's contacting human resources, Mr. Becker made numerous attempts to harass Mr. Ramsey. In addition, and in further retaliation, Becker double charged Mr. Ramsey's loyal client, Donna Wielgolewski, who Ramsey had been training for seven months. Her double charging made her upset at the club and Ramsey's inability to make the mangers refund her money quickly escalated the problem and resulted in an unhappy client.

152. On December 30, 2012, Mr. Becker also retaliated against Ramsey by interfering with Ramsey's relationship with a client, Nicholas Siambis. Mr. Siambis had chosen to work with Ramsey upon joining the club and meeting with him. While Mr. Siambis was signing his membership Mr. Becker intervened and told the client he had to sign a contract with Becker rather than Mr. Ramsey. Mr. Siambis refused, stating he would only conduct training business with Mr. Ramsey. Mr. Becker continued to berate and pressure Mr. Siambis for being overweight. Nicholas Siambis contacted Mr. Ramsey after his interaction with Mr. Becker saying he felt bullied and did not wish to deal with Becker again otherwise he would quit the gym.

153. 720 ILCS 5/17-31 provides as follows:

False statement to procure credit or debit card.

A person commits false statement to procure credit or debit card when he or she makes or causes to be made, either directly or indirectly, any false statement in writing, knowing it to be false and with the intent that it be relied on, respecting his or her identity, his or her address, or his or her

ELECTRONICALLY FILED
7/7/2014 9:41 PM
2014-L-007133
PAGE 27 of 34

employment, or that of any other person, firm, or corporation, with the intent to procure the

issuance of a credit card or debit card. A violation of this Section is a Class 4 felony.

154.    720 ILCS 5/17-1 provides as follows:

General deception.

A person commits a deceptive practice when, with intent to defraud, the person does any of the

following:

(1) He or she knowingly causes another, by deception

or threat, to execute a document disposing of property or a document by which a

pecuniary obligation is incurred.

(2) Being an officer, manager or other person participating in the direction of a financial

institution, he or she knowingly receives or permits the receipt of a deposit or other investment,

knowing that the institution is insolvent.

(3) He or she knowingly makes a false or deceptive

statement addressed to the public for the purpose of promoting the sale of property or

service.

155.    On or about April 22, 2013, Mr. Steger reported to management that multiple clients of

Defendant's had been doubled charged for personal training sessions and that electronic funds

transfer had been deliberately altered to deduct funds on a date that was not agreed upon by the

personal training contract and that clients were billed for personal training sessions after the

contract had ended. Specifically these clients included:

A) Cristi Hoffman, who had been charged on March 1, 2013 and again on March 31, 2013.

B) Jonathan Law and Nicole Law who had been double charged on March 4, 2013 and again on

March 30, 2013.

ELECTRONICALLY FILED
7/7/2014 9:41 PM
2014-L-007133
PAGE 28 of 34

C) Diane Broadley who had been double billed on March 11, 2013 and again on March 30, 2013

D) Melissa Gregory who had been mischarged for small group training for 3 months.

E) Jason Gull who had been charged multiple times for personal training after his contract had ended.

F) David Kane, who had been double billed on March 1, 2013 and again on March 31, 2013.

156. On or about March 13, 2013, and pursuant to his ethical and legal duties, Mr. Stager sent an email to Mr. Becker informing him of the seemingly deceptive practices that were being used to fraudulently obtain money for personal training services. On or about March 15, 2013, Mr. Becker responded to the email from Mr. Steger informing him that charges would be stopped.

157. On or about March 17, 2013, Mr. Steger sent another email to Mr. Becker, including Travis Christopherson, General Manager and Regional Director of Personal Training, Vic Kemming, that two of his clients, Melissa Gregory and Jason Gull were once again charged for purchases that were not authorized via electronic funds transfer.

158. Defendant, by and through its agent and employee, terminated Mr. Steger's employment on May 1, 2013

159. At the May 1, 2013 separation meeting, Defendant informed Mr. Steger that the reason for the termination was based on an inventory count that was not turned in on time.

160. There were over thirty other employees working for Defendant that had also not turned in the inventory count in a timely fashion and were not terminated.

161. Defendant, by and through its agent and employee, terminated Mr. Ramsey's employment on May 1, 2013.

162. After Defendant was terminated and was attempting to leaving premises, Mr. Becker battered Mr. Steger by grabbing his wrist in front of Mr. Christopherson.

ELECTRONICALLY FILED
7/7/2014 9:41 PM
2014-L-007133
PAGE 29 of 34

29

163. On May 2, 2013, Mr. Steger sent an email to Mary Jo Manella in Human Resources of his wrongful termination and that Mr. Becker had physically attacked him.

164. On May 2, 2013, Defendant, by and through its employee and agent, terminated Mr. Ramsey's employment.

165. The reason provided for Mr. Rasmey's termination was that he was discussing a co-worker's employment status.

WHEREFORE, Plaintiffs pray for judgment against Defendant for an amount in excess of $80,000.00 each for back pay, with interest, front pay, past and future lost benefits, wages, bonuses, raises, compensation for damages sustained as a result of the violation, punitive damages, litigation costs, expert witness fees, attorneys' fees, and any other relief that this Honorable Court deems appropriate and just.

## COUNT VI (WHISTLEBLOWER ACT)

166. Plaintiffs re-alleges the allegations common counts six and seven.

167. 740 ILCS 174/20 prohibits retaliation against an employee for refusing, among other things, to participate in violating a state rule or regulation. Specifically, it provides as follows:

Sec. 20.1. An employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation, including, but not limited to, violations of the Freedom of Information Act.

168. Defendant terminated Plaintiffs after they reported credit card fraud and refused to engage in criminal activities.

169. If Plaintiffs had engaged in creating fictitious memberships and double billing credit cards, they would have been in violation of 720 ILCS 5/17-31 Sec. 17-31 which states as follows:

A person commits false statement to procure credit or debit card when he or she makes or causes

ELECTRONICALLY FILED
7/7/2014 9:41 PM
2014-L-007133
PAGE 30 of 34

to be made, either directly or indirectly, any false statement in writing, knowing it to be false and with the intent that it be relied on, respecting his or her identity, his or her address, or his or her employment, or that of any other person, firm, or corporation, with the intent to procure the issuance of a credit card or debit card. A violation of this Section is a Class 4 felony.

170. Plaintiffs were acting in accordance with (720 ILCS 5/17-31) by avoiding participation in billing clients for unrequested services and for not creating fake personal training memberships.

171. Plaintiffs also acted in accordance with 720 ILCS 5/17-1) (from Ch. 38, par. 17-1 which states:

A person commits a deceptive practice when, with intent to defraud, the person does any of the following:

    (1) He or she knowingly causes another, by deception or threat, to execute a document disposing of property or a document by which a pecuniary obligation is incurred.

    (2) Being an officer, manager or other person

       participating in the direction of a financial institution, he or she knowingly receives or permits the receipt of a deposit or other investment, knowing that the institution is insolvent.

    (3) He or she knowingly makes a false or deceptive statement addressed to the public for the purpose of promoting the sale of property or services.

172. Mr. Becker's behavior of continuously committing fraudulent activities and refusing to refund clients for unrequested services was not only a violation of the law, but also displays inexcusable actions on the part of Defendants administration.

173. Defendant's acts as set forth herein violate 740 ILCS 174/20.

ELECTRONICALLY FILED
7/7/2014 9:41 PM
2014-L-007133
PAGE 31 of 34

174. As a result of Defendant's violations of the Whistleblower Act, Plaintiffs have suffered and will in the future suffer damages, including but not limited to lost back and future pay, emotional and physical distress, mental anguish, pain and suffering, attorneys' fees, and litigation costs.

WHEREFORE, Plaintiffs pray for judgment against Defendant for an amount in excess of $80,000.00 each for back pay, with interest, front pay, past and future lost benefits, wages, bonuses, raises, compensation for damages sustained as a result of the violation, punitive damages, litigation costs, expert witness fees, attorneys' fees, and any other relief that this Honorable Court deems appropriate and just.

## COUNT VII: COMMON LAW RETALIATORY DISCHARGE

175. Plaintiffs re-allege the allegations common to all Part B counts as paragraph 43 of count III.

176. Defendant discharged Plaintiffs in retaliation for one or more of the following reasons:

 i. In retaliation for reporting criminal activities;

 ii. In retaliation for refusing to participate in a crime;

177. It is in contravention of clearly mandated public policy for an employer to discharge an employee in retaliation for reporting or threaten reporting of illegal or improper conduct.

178. Plaintiffs' reporting of Defendant's criminal activities is activity protected by clearly mandated public policy.

179. Plaintiffs' refusal to engage in criminal behavior is activity protected by clearly mandated public policy.

ELECTRONICALLY FILED
7/7/2014 9:41 PM
2014-L-007133
PAGE 32 of 34

180. Defendant's discharge of Plaintiffs in retaliation for reporting and/or refusing to participate in a crime is in contravention of clearly mandated public policy.

181. Defendant's discharge of Plaintiffs in contravention of clearly mandated public policy was wanton and willful and punitive damages are appropriate to punish Defendant, deter such future conduct by Defendant, and to send a message to companies in Defendant's industry that such behavior will not be tolerated.

WHEREFORE, Plaintiffs pray for judgment against Defendant for an amount in excess of $80,000.00 each for back pay, with interest, front pay, past and future lost benefits, wages, bonuses, raises, compensation for damages sustained as a result of the violation, punitive damages, litigation costs, expert witness fees, attorneys' fees, and any other relief that this Honorable Court deems appropriate and just.

_____ s/ Michael L. Fradin
Attorney for Plaintiffs

ELECTRONICALLY FILED
7/7/2014 9:41 PM
2014-L-007133
PAGE 33 of 34

Michael L. Fradin, Attorney at Law
CCC: 54161
8401 Crawford Ave. Ste. 104
Skokie, IL 60076
Phone: 847-644-3425
Fax: 847-673-1228
Email: mike@fradinlaw.com

## ATTORNEY'S CERTIFICATION

The undersigned attorney hereby certifies that he has read the above pleadings and that to the best of his knowledge, information and belief, formed after a reasonable inquiry, it is well grounded in fact and is warranted by existing law and that it is not interposed for any improper purpose.

s/ Michael L. Fradin
Attorney for Plaintiff

ELECTRONICALLY FILED
7/7/2014 9:41 PM
2014-L-007133
PAGE 34 of 34

### Affidavit of Damages Pursuant to Supreme Court Rule 222

The undersigned, Michael L. Fradin, upon oath, hereby states that the total money damages in the above-captioned matter are in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

s/ Michael L. Fradin
Attorney for Plaintiff

Michael L. Fradin, Attorney at Law
CCC: 54161
8401 Crawford Ave. Suite 104
Skokie, IL 60076
847-644-3425 (phone)
847-673-1228 (fax)