# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JARED STEGER; DAVID RAMSEY; JOHN
CHRISPENS; MAI HENRY; individually, and
on behalf of all others similarly situated,

        Plaintiffs,

    vs.

LIFE TIME FITNESS, INC., a Minnesota
corporation; LTF CLUB MANAGEMENT
COMPANY, LLC, Delaware Limited Liability
Company;    and LTF CLUB OPERATIONS
COMPANY, INC., a Minnesota; and DOES 1
to 10, Inclusive,

        Defendants.

Case No. 1:14-cv-06056

Judge Sharon Johnson Coleman

Magistrate Judge Jeffrey Cole

---

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR CONDITIONAL
CERTIFICATION AND JUDICIAL NOTICE PURSUANT TO SECTION 216(b) OF THE
FAIR LABOR STANDARDS ACT**

## BRIEF STATEMENT OF ISSUE TO BE DECIDED

Is this case, where Plaintiffs allege violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.* ("FLSA") resulting from Defendants' unwritten de facto policy of requiring Personal Trainers ("PTs") to work "off the clock" to avoid minimum wage and overtime compensation, its written policy of deducting previously paid wages from PTs' subsequent paychecks diluting their rate of pay, and its uniform requirement that PTs' perform activities in which they could not earn a commission (and therefore did not get paid for), appropriate for conditional certification and Court-authorized notice, under Rule 216(b) of the FLSA.

# SUMMARY OF ARGUMENT

Plaintiffs David Ramsey, Jared Steger, John Chrispens and Mai Henry ("Plaintiffs") submit this memorandum to support their motion for conditional certification under 29 U.S.C. § 216(b) of the FLSA (the "Motion"). Plaintiffs move under the FLSA on behalf of all persons who are or were employed by Defendants Lifetime Fitness, Inc., LTF Club Management Company, LLC, and LTF Club Operations Company, Inc. ("Defendants") throughout the country who were not paid the minimum wage and/or overtime from July 7, 2011 to the present (the "FLSA Class").

Plaintiffs and the FLSA Class members are similarly situated under the FLSA and meet the requirements for dissemination of notice pursuant to Section 216(b). Specifically, Plaintiffs and the FLSA Class members are similarly situated because:

1) Defendants have an unwritten de facto policy of discouraging PTs from reporting all hours worked and pressuring them to work "off the clock" to avoid its obligations under the FLSA;

2) Defendants have a uniform written "draw" policy in which Defendants "recoup" (deduct) previously earned wages from PTs' paychecks diluting their rate of pay for certain pay periods below 1.5 times the minimum wage, and often even below minimum wage;

3) Defendants have a practice of reclassifying PTs as exempt employees—after they complete their short training period—to avoid having to pay PTs overtime;

4) All of the PTs are paid pursuant to the same Incentive Compensation Plan (i.e., PTs earn either a commissions or a draw);

5) Defendants do not pay PTs overtime after they complete their training;

6) Defendants' Personal Training Department Heads ("PTDHs")—the persons who supervise the PTs—earn commissions every pay period which is directly affected by the draws accrued by PTs in their department;

7) Defendants are aware of complaints from PTs regarding PTDHs instructing them not to earn draw and to not punch in and out of the clock;

8) Defendants keep track of the draw accrued by PTs and Defendants' payroll records show these amounts being deducted from the PTs' wages; and

9) The majority of job duties assigned to and performed by PTs are the same and are of the type that earns no commission.

As explained below, Plaintiffs have presented sufficient evidence to show that Defendants are engaged in a uniform and consistent corporate-wide policy of discouraging PTs from recording all hours they work and pressuring them to work "off the clock." Defendants' unwritten de facto policy flouts the fundamental principle of the FLSA: employers must monitor and compensate their employees for all work they "suffer or permit." 29 U.S.C. § 211(c) (Every employer subject to the FLSA "shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records" for specified periods of time.); 29 U.S.C. § 203(g); 29 C.F.R. § 785.11 ("Work not requested but suffered or permitted is work time.").

The foregoing uniform policy, practices and conduct extend to Defendants' fitness centers throughout the country as demonstrated by the 70 opt ins so far and 28 declarations submitted by FLSA Class members from 9 different states. The effect of Defendants' policy, practices and conduct is that Plaintiffs and the FLSA Class members have uniformly been deprived of compensation for all hours worked in violation of the FLSA. Consistent with

numerous other analogous cases, this action is appropriate for conditional certification under the lenient two-stage analysis courts employ in evaluating alleged "off the clock" claims under the FLSA. For the reasons set forth herein, Plaintiffs respectfully request that the Court grant the Motion and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA.

# TABLE OF CONTENTS

**PAGES**

I.    STATEMENT OF FACTS.................................................................................1

II.   PLAINTIFFS AND THE FLSA CLASS MEMBERS ARE SIMILARLY
      SITUATED...........................................................................................................2

III.  ARGUMENT............................................................................................................6

      A.   Conditional Certification Under Rule 216(b) of the FLSA is Appropriate.............6

      B.   Courts in the Seventh Circuit Employ a Two-Stage Certification Process............7

           1.   The First Stage Analysis: "Modest Factual Showing"...............................8

           2.   The Second Stage Analysis: More Stringent Review................................10

      C.   Based on the Evidence Submitted, Plaintiffs Have met Both the Lenient and
           Intermediate Standards to Carry Them Past The First Stage of the Conditional
           Certification Process…………………….................................................................11

IV.   CONCLUSION.........................................................................................................14

# TABLE OF AUTHORITIES

**CASES**                                                                                        **PAGES**

*Alvarez v. City of Chicago*, 605 F.3d 445 (7th Cir. 2010)................................................................5

*Anyere v. Wells Fargo, Co.*, 2010 WL 1542180 (N.D. Ill. April 12, 2010)........................5, 8, 10

*Betancourt v. Maxim Healthcare Servs., Inc.*, 2011 WL 1548964 (N.D. Ill. Apr. 21, 2011)..................................................................................................................11

*Bergman v. Kindred Healthcare, Inc.*, 949 F.Supp.2d 852 (N.D. Ill. 2013)................................7

*Brown v. Club Assist Rd. Serv. U.S. Inc.*, 2013 WL 5304100 (N.D. Ill. Sept. 19, 2013)..............9

*Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971 (7th Cir. 2011)..................................................5, 6

*Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872 (7th Cir. 2012)..........................................5, 9

*Flores v. LifewayFoods, Inc.*, 289 F.Supp.2d 1042 (N.D. Ill. 2003)..........................................6

*Gambo v. Lucent Techs., Inc.*, 2005 WL 3542485 (N.D. Ill. Dec. 22, 2005)................................5

*Heckler v. DK Funding, LLC*, 502 F.Supp.2d 777 (N.D. Ill. 2007)..........................................10

*Howard v. Securitas Sec. Serves., USA, Inc.*, 2009 WL 140126 (N.D. Ill. Jan. 20, 2009).........10

*Jirak v. Abbott Laboratories, Inc.*, 566 F.Supp.2d 845 (N.D. Ill. 2008).....................6, 7, 10, 11

*Kurgan v. Chiro One Wellness Centers, LLC*, 2014 WL 642092 (N.D. Ill. Feb. 19, 2014)..................................................................................6, 7, 8, 9, 10, 11

*Madden v. Corinthian Colleges, Inc.*, 2009 WL 4757269 (N.D. Ill. Dec. 8, 2009)..................................................................................................5, 8, 10

*Myers v. Crouse Health System, Inc.*, 274 F.R.D. 404 (N.D.N.Y. 2011)....................................7, 8

*Pefanis v. Westway Diner, Inc.*, 2008 WL 4546526 (S.D.N.Y. Oct. 8, 2008)..............................11

*Russell v. Ill. Bell. Tel. Co.*, 575 F.Supp.2d 930 (N.D. Ill. 2008)..........................................8, 10

*Smallwood v. Illinois Bell Tel. Co.*, 710 F. Supp.2d 746 (N.D. Ill. 2010)..................................11

*Strait v. Belcan Engineering Group, Inc.*, 911 F.Supp.2d 709 (N.D. Ill. July 1, 2009)..............6

*Tamas v. Family Video Movie Club, Inc.,* 2013 WL 4080649 (N.D. Ill. Aug. 13, 2013)…..........9

*Vaughn v. Mortgage Source, LLC,* 2010 WL 1528521 (E.D.N.Y. Apr. 14, 2010)…...................11

*Witteman v. Wisconsin Bell, Inc.,* 2010 U.S. Dist. LEXIS 8845 (W.D. Wis. Feb. 2, 2010)…..........7

*White v. MPW Indus. Servs. Inc.* 236 F.R.D. 363 (E.D. Tenn. 2006)…...........................7

*Woods v. New York Life Ins. Corp.,* 686 F.2d 578 (7th Cir. 1982)….................................5

**STATUTES**

29 U.S.C. § 207(i)….............................................................................................1, 10

29 U.S.C. § 216(b)..............................................................................................12, 5

# I. STATEMENT OF FACTS

Defendants own and operate fitness centers throughout the United States. Defendants employed Plaintiffs and currently employ roughly 3,000 PTs in over 106 fitness centers in 26 states. (Ex. A, Deposition of Derrick Boaz ("Boaz Dep."), 22:20-22; 32:19-33:10.) The total class size is approximately 6000 PTs. (*Id.*) There are several individuals within the Personal Training Department who fall under the job title umbrella of "Personal Trainer" including, Personal Trainers, Pilates Instructors, Pilates Coordinators, Metabolic Specialists, Nutritionists, Dietary Specialists, and Assistant Department Heads (collectively "PTs" or "Personal Trainers"). (Ex. A 30:2-32:18.) Employees in the Personal Training Department often held two job titles.[1]

The main job duty of the PTs, regardless of job title or location, is to provide *personal training services* to Defendants' customers.[2] Beyond this, the PTs perform several additional duties: performing mandatory cleaning duties, emailing managers, attending mandatory meetings, performing mandatory consultations for prospective clients, and completing mandatory educational classes.[3]

---

[1] *See* Declarations of FLSA Class members attached to Compendium of Declarations: John Chrispens ("Chrispens Decl.") ¶ 2; Chandra Heatherington ("Heatherington Decl") ¶ 2; Jared Steger ("Steger Decl") ¶ 2; Charles Rigby ("Rigby Decl") ¶ 2; and Shanon Squires ("Squires Decl.") ¶ 2.

[2] *See* ¶ 2 of all the declarations submitted by FLSA Class members.

[3] *See* Declarations of FLSA Class members attached to Compendium of Declarations: Joseph Chiarello ("Chiarello Decl.") ¶ 6; Kaylie Marsh ("Marsh Decl.") ¶6; Rachel Mullane ("Mullane Decl.") ¶ 7; Dale Smith ("Smith Decl.") ¶ 7; David Ramsey ("Ramsey Decl.") ¶ 8; Hetherington Decl. ¶ 8; Gabriel Boggs ("Boggs Decl.") ¶ 8; Seth Harris ("Harris Decl.") ¶ 8; Brandon Victor ("Victor Decl.") ¶ 8; Rigby Decl. ¶ 8; Steger Decl. ¶ 8; Kevin McAloon ("McAloon Decl.") ¶ 8; Matthew Campione ("Campione Decl.") ¶ 8; Skyler Vandiver ("Vandiver" Decl.") ¶ 8; Ann Caldwell ("Caldwell Decl.") ¶ 8; Cody Gullickson ("Gullickson Decl.") ¶ 8; Robert Mitchell "Mithcell Decl.") ¶ 8; Erica Rosenbaum ("Rosenbaum Decl.") ¶8; Chrispens Decl. ¶ 9; Squires Decl. ¶ 9; David Smith ("Smith Decl.") ¶ 9; Kevin Dehlinger ("Dehlinger Decl.") ¶ 9; Mary Gainey ("Gainey Decl.") ¶ 9; Vade Pierce ("Pierce Decl.") ¶ 9;

According to Defendants' 30(b)(6) witness (the Senior Manager of Compensation and HR Information Systems), all PTs were classified as "exempt" commissioned employees under 29 U.S.C. § 207(i). (Ex. A 34:15-35:12). As a result of this exempt classification, PTs were not paid overtime. (*Id.*) This is despite evidence that PTs regularly worked overtime hours.[4] In fact, Assistant Department Heads ("ADHs") and Pilates Coordinators ("PCs") were required to work overtime hours. (*See* Ex. B - ADH Run Rate Tracker; Ex. C – ADH Weekly Highly Effective Schedule; Ex. D – The Pilates Coordinator; and Ex. E - Lori Hock email re Pilates Coordinators new expectations). In each document, ADHs and PCs were expected to work more than 40 hours per week generating leads, performing administrative work, and servicing Defendants' customers. (*Id.*) ADHs and PCs, according to these documents, must devote equal time to each category of work, which means that ADHs and PCs are committing only 1/3 of their time to revenue generating and 2/3 of their performing non-sales related duties.

In addition, Defendants' 30(b)(6) witness testified that the job duties of PTs is to generally provide training services, show members how to use equipment, understand their fitness goals, and help them achieve those fitness goals. (Ex. A 39:21-40:7.) Moreover, Defendants' 30(b)(6) witness testified that PTs must work an average of at least 36 hours a week in order to remain eligible for benefits, and that on average, PTs are scheduled to work 40 hours per week. (*Id.* 67:23-25; 91:12-17.)

---

John Ladysh ("Ladysh Decl.") ¶9; Darcie Osborn ("Osborn Decl.") ¶ 10; Noah Peery ("Peery Decl.") ¶ 10.
    [4] *See* Chiarello Decl. ¶ 4; Smith Decl. ¶ 4; Ramsey Decl. ¶ 4; Hetherington Decl. ¶ 4; Boggs Decl. ¶ 4; Marsh Decl. ¶ 4; Harris Decl. ¶ 4; Victor Decl. ¶ 4; Rigby Decl. ¶ 4; Steger Decl. ¶ 4; McAloon Decl. ¶ 4; Campione Decl. ¶ 4; Vandiver Decl. ¶ 4; Caldwell Decl. ¶ 4; Gullickson Decl. ¶ 4; Mullane Decl. ¶ 4; Mitchell Decl. ¶ 4; Powell Decl. ¶4; Rosenbaum Decl. ¶ 5; Chrispens Decl. ¶ 5; Squires Decl. ¶ 5; Smith Decl. ¶ 5; Dehlinger Decl. ¶ 5; Gainey Decl. ¶ 5; Pierce Decl. ¶ 5; Ladysh Decl. ¶ 5; Osborn Decl. ¶ 6; and Peery Decl.¶ 6.

What is most telling, however, is the lack of diligence to determine whether the PTs are truly exempt from overtime. One of the duties of the 30(b)(6) witness deposed is to evaluate whether PTs are exempt from overtime. (Ex. A 35:17-25.) Mr. Boaz started working for Defendants on October 1, 2004. (*Id.* 36:22-37:1.) Mr. Boaz created a written description for PTs which he claims was one of the documents he utilized to determine whether PTs were exempt from overtime. (*Id.* 37:6-14.) This written job description for PTs was written within two month after he began his employment with Defendants, and has not been modified since 2006. (*Id.* 43:11-18.) When asked what part of the written job description led him to believe that PTs were exempt from overtime, he could not recall. (*Id.* 46:10-18.)

In addition to creating the written job descriptions for PTs, Mr. Boaz testified that he also reviewed the PTs' commission pay structure to determine whether they were exempt. (Ex. A 48:7-11; 49:19-24.) Mr. Boaz testified that Defendants configured its payroll system (Workday) to pay PTs 1.5 times the applicable minimum wage for every hour worked. (*Id.* 51:13-22.) The configuration to Workday was implemented in 2009. (*Id.* 54:19-20.) Since 2009, Mr. Boaz has not followed up with the payroll department to determine whether PTs are still being paid 1.5 the applicable minimum wage for all hours worked. (*Id.* 4:9-18.) Another method implemented by Defendants to determine whether PTs are properly classified as exempt is to conduct periodic job audits. (*Id.* 59:2-9.) This entails observing employees perform their jobs to validate whether the job description accurately captures the job duties actually being performed by PTs. (*Id.* 59:11-15.) Mr. Boaz, however, has not conducted a job audit of PTs to validate whether they are exempt during the relevant time period (July 7, 2011 to the present). (*Id.* 60:8-15.) According to Mr. Boaz, "[t]hat was years ago." (*Id.* 60:8-11.)

Lifetime pays its PTs entirely via commission. (Ex. F - 2012 Incentive Compensation Plan for Personal Trainers).[5] However, if the employee does not make enough in commissions to cover 1.5 times the minimum wage for the hours they work, Defendants temporarily pays them a "draw." (Ex. A 73:12-16.) However, Defendants keep track of all the money they have paid employees via the draw, and "recoup" (deduct) the amounts they have paid PTs in draw in a later paycheck. (Ex. A. 98:25-99:4)[6] This dilutes the PTs rate of pay for the pay period (in which the draw was accrued) below the 1.5 times requirement of § 207(i)(1).[7] This completely eviscerates the § 207(i) sales person exemption because the 1.5 times requirement of subsection § 207(i)(1) is not met. PTs across the country were paid the same way and subject to the same dilution.[8]

Defendants' corporate policy was to have PTs work "off the clock."[9] This was to avoid paying the PTs draw.[10] (*Id.*) Lifetime only wanted PTs clocked in when they were servicing clients. (*See e.g.,* Ex. G – Mai Henry email). To enforce this policy, Defendants issued Personal Improvement Plans ("PIPs") to PTs who did not comply with this policy and continued to earn draw. (Ex. H – PIP.) For example, in this PIP presented, the PT was instructed to "**Ensure no**

---

[5] *See also* Hetherington, Chiarello, Boggs, Harris, Marsh, Mullane, Victor, Rigby, Squires, Ramsey, Steger, McAloon, Campione, Vandiver, Caldwell, Gullickson, Smith, Mitchell, Powell Decls. ¶5; Chrispens, Smith, Dehlinger, Gainey, Pierce, Rosenbaum, Ladysh Decls. ¶ 6; and Peery, Osborn Decls. ¶ 7.

[6] *See also* Hetherington, Boggs, Harris, Victor, Squires, Ramsey, Steger, McAloon, Campione, Caldwell, Mitchell, Powell, Rosenbaum Decls. ¶ 11; Chrispens, David Smith, Dehlinger, Gainey, Pierce, Ladysh Decls. ¶ 12; Marsh Decl. ¶9; Mullane, Smith Decls. ¶ 10; and Peery, Osborn Decls. ¶ 13).

[7] *Id.*

[8] *Id.*

[9] Hetherington, Boggs, Harris, Mullane, Victor, Rigby, Ramsey, Steger, McAloon, Campione, Vandiver, Caldwell, Gullickson, Mitchell, Powell Decls. ¶ 6; Squires, Smith, Chrispens, Dehlinger, Gainey, Pierce, Rosenbaum, Ladysh Decls. ¶ 7; Smith Decl. ¶ 5; Peery, Osborn Decls. ¶ 8).

[10] *Id.*

4

**more draw is accrued**"; that the "Expectation is draw is to be paid back and not accrued anymore"; and that "accruing more than $0 in draw is not acceptable." (*Id.*) In fact, Defendants were aware that Department Heads were instructing PTs not to earn draw and not to clock in. (Boaz Dep. p. 74:24-77:10.)

To further buttress this policy, Defendants gave its Personal Training Department Heads an economic incentive to push their employees to work "off the clock." Defendants gave its Department Heads a monthly bonus that was tied to how much profit the club was earning.[11] (Ex. I – Department Head Comp Plan.) Since draw payments to PTs dragged down club profits significantly, draw payments to PTs hurt the Department Heads' bonuses significantly. (*Id.*) The more draw that was paid out to PTs, the less bonus that was paid to Department Heads. (*Id.*) As a result, according to PTs across the nation, Department Heads instructed them to work off the clock to avoid accruing draw.

Under Defendants' compensation model, PTs spent a majority of their time performing ***mandatory*** activities for which they were not paid a commission or an hourly wage.[12] Such activities includes cleaning the exercise equipment, attending weekly meetings with managers, performing mandatory free consultations and fitness assessments for prospective clients, completing mandatory educational classes, emailing managers, walking the floor soliciting new business, manning the service desk and promotional booths, and providing equipment

---

[11] Hetherington, Boggs, Harris, Mullane, Victor, Rigby, Ramsey, Steger, McAloon, Campione, Vandiver, Caldwell, Gullickson, Mitchell, Powell Decls. ¶ 7; Squires, Smith, Chrispens, Dehlinger, Gainey, Pierce, Rosenbaum, Ladysh Decls. ¶ 8; Smith Decl. ¶ 5; Peery, Osborn Decls. ¶ 9.
[12] Chiarello Decl. ¶8; Smith Decl. ¶ 9; Hetherington, Boggs, Harris, Mullane, Victor, Squires, Rigby, Ramsey, Steger, McAloon, Campione, Vandiver, Caldwell, Gullickson, Mitchell, Powell Decls. ¶ 10; Chrispens, David Smith, Dehlinger, Gainey, Pierce, Rosenbaum, Ladysh Decls. ¶11; and Peery, Osborn Decls. ¶ 12.

orientations for clients. (*Id.*; *see also* Boaz Dep. p. 92:6-25, 178:22-179:7, 39:21-40:7; Ex. J -
PTs must clean machines; Ex. K - LTF Second Floor Cleaning).

## II. PLAINTIFFS AND THE FLSA CLASS MEMBERS ARE SIMILARLY SITUATED

Plaintiffs were treated the same way as the FLSA Class members. First, Plaintiffs were
all required to work "off the clock."[13] Similarly, they were all subject to the draw system.[14]
Plaintiffs, just like the FLSA Class members, had their pay rate for certain pay periods diluted
due to the draw system taking money out of their paychecks.[15] This pulled their rate of pay
below 1.5 times minimum wage, and sometimes even below minimum wage.[16] None of the
Plaintiffs were paid overtime compensation.[17] All the Plaintiffs and declarants in this motion
have testified that, to their knowledge, all of the PTs across the country are compensated the
same way.[18] Plaintiffs have also testified that they were required to perform mandatory activities
for which they could not earn a commission.[19] Nor were they paid an hourly rate for such
mandatory activities.[20] (Declarations: Chrispens ¶ 11; Steger ¶ 10; Ramsey ¶ 10).

## III. ARGUMENT

### A.     Conditional Certification Under Rule 216(b) of the FLSA is Appropriate

The FLSA "gives employees the right to bring their FLSA claims through a 'collective
action' on behalf of themselves and other 'similarly situated' employees." *Alvarez v. City of
Chicago*, 605 F.3d 445, 448 (7th Cir. 2010) (citing 29 U.S.C. § 216(b)); *Woods v. New York Life*

---

[13] Chrispens Decl. ¶ 7-8; Steger Decl. ¶ 6-7; Ramsey Decl. ¶ 6-7.
[14] Chrispens Decl. ¶ 6, 8, 12; Steger Decl. ¶ 5, 7, 11; and Ramsey Decl. ¶ 5, 7, 11.
[15] Chrispens Decl. ¶ 12; Steger Decl. ¶ 11; Ramsey Decl. ¶ 11.
[16] Chrispens Decl. ¶ 12; Steger Decl. ¶ 11; Ramsey Decl. ¶ 11.
[17] (Declarations: Chrispens ¶ 5; Steger ¶ 4; Ramsey ¶ 4).
[18] (Declarations: Chrispens ¶ 5-6; Steger ¶ 4-5; Ramsey ¶ 4-5).
[19] (Declarations: Chrispens ¶ 11; Steger ¶ 10; Ramsey ¶ 10).
[20] (Declarations: Chrispens ¶ 11; Steger ¶ 10; Ramsey ¶ 10).

6

*Ins. Corp.*, 686 F.2d 578, 580 (7th Cir. 1982) (same). A collective action under the FLSA is distinguished from a Rule 23 class action in that "in a collective action unnamed plaintiffs need to opt in to be bound, rather than, as in a class action, opt out not to be bound." *Espenscheid v. DirectSat USA, LLC,* 688 F.3d 872, 877 (7th Cir. 2012). This is an important distinction because an employee's statute of limitations is not to be tolled until he or she files a written consent form. 29 U.S.C. § 216(b); *Gambo v. Lucent Techs., Inc.,* 2005 WL 3542485 at *3 (N.D. Ill. Dec. 22, 2005) ("a person who does not opt-in is not part of the FLSA collective action and is not bound by the court's decision."). Accordingly, as the Seventh Circuit aptly noted, "[t]he conditional approval process is a mechanism used by district courts to establish whether potential plaintiffs in the FLSA collective action should be sent a notice of their eligibility to participate and given the opportunity to opt in to the collective action." *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 974 (7th Cir. 2011) (citing *Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010)).

This Court should conditionally certify this matter as a collective action pursuant to Section 216(b) and issue notice because, as set forth below, Plaintiffs have demonstrated that they are similarly situated to the FLSA Class members employed in fitness centers throughout the country in that they have been subjected to Defendants' unwritten de facto policy of pressuring PTs to work "off the clock." See e.g., *Madden v. Corinthian Colleges, Inc.*, 2009 WL 4757269 at *4 (N.D. Ill. Dec. 8, 2009) (FLSA conditional certification granted in which plaintiffs alleged that employer "engaged in an informal, unwritten policy of intimidating its employees into recording less overtime than they actually worked."); see also *Anyere v. Wells Fargo, Co.*, 2010 WL 1542180 at *3 (N.D. Ill. April 12, 2010) (FLSA conditional certification granted where plaintiffs alleged that employer "had an unwritten de facto policy of not paying overtime hours."). Plaintiffs have met their burden at the initial stage by providing not only

substantial allegations, but also deposition testimony of Plaintiffs and Defendants' 30(b)(6) witness, 28 FLSA Class member declarations from 9 different states, and Defendants' own documents, to support Plaintiffs' contention that Plaintiffs and the FLSA Class members are similarly situated.

**B.**     **Courts in the Seventh Circuit Employ a Two-Stage Certification Process**

Certification of an FLSA action in this Circuit proceeds in two stages. *Jirak v. Abbott Laboratories, Inc.*, 566 F.Supp.2d 845, 847 (N.D. Ill. 2008) ("[T]he majority of courts—including this Court—have adopted a two-step process for determining whether an FLSA lawsuit should proceed as a collective action.").

**1.**     **The First Stage Analysis: "Modest Factual Showing"**

At the first stage, "the court makes an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiff with respect to whether a FLSA violation has occurred." *Kurgan et al. v. Chiro One Wellness Centers LLC*, 2014 WL 642092 at *3 (N.D. Ill. Feb. 19, 2014) (citing *Myers, supra,* 624 F.3d at 555). Plaintiffs meet this burden by making a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Flores v. Lifeway Foods, Inc.*, 289 F.Supp.2d 1042, 1045 (N.D. Ill. 2003); *Strait v. Belcan Engineering Group, Inc.,* 911 F.Supp.2d 709, 718 (N.D. Ill. 2012); *Ervin v. OS Rest. Servs., Inc.*, No. 08-C-1091, 2009 U.S. Dist. LEXIS 56062, at *8 (N.D. Ill. July 1, 2009) ("[A] plaintiff need only demonstrate a factual nexus that binds potential members of a collective action together."); *Witteman v. Wisconsin Bell, Inc.*, No. 09-cv-440-vis, 2010 U.S. Dist. LEXIS 8845, at *2-*3 (W.D. Wis. Feb. 2, 2010) ("The requirements of conditional certification are lenient because approval simply allows plaintiffs to provide notice to other potential class members so that they

may make an informed decision whether to join the case"). "The burden under the first step of the analysis is not heavy." *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 367 (E.D. Tenn. 2006). While the "modest factual showing" cannot be satisfied simply by unsupported assertions, it is a "low standard of proof because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Myers, supra,* 624 F.3d at 555; see also *Bergman v. Kindred Healthcare, Inc.,* 949 F.Supp.2d 852, 855 (N.D. Ill. 2013); and *Jirak, supra,* 566 F.Supp.2d at 847.

In certain instances when extensive discovery has been allowed, an intermediate standard—not the decertification standard as set forth below—may be applied by the district court to determine whether plaintiffs have met their burden. See *Kurgan, supra,* 2014 WL 642092 at \*3 (citing *Bergman, supra,* 949 F.Supp.2d at 855). "The intermediate standard, while more stringent than the lenient first-step standard, is less rigorous than the second-step decertification standard." *Kurgan,* at \*3. "Both sides' evidentiary submissions [are] considered in determining whether there is a group of similarly situated employees who may be discovered by sending out an opt-in notice." *Id.* (citing *Bergman,* at 856). "But in 'evaluating each side's submissions, it must be kept in mind that, despite the discovery that has been allowed, defendants still have greater access to evidence than plaintiffs and plaintiffs' modest showing need not be conclusive.'" *Id.* "So even if a stricter standard is applied, Plaintiffs need only 'make a modest 'plus' factual showing that there is a group of potentially similarly situated plaintiffs that may be discovered by sending opt-in notices." *Id.*

It should also be noted that in the first stage, the merits of Plaintiffs' claims are not at issue in determining the propriety of whether to "conditionally" certify the FLSA Class. *Anyere, supra,* 2010 WL 1542180 at \*3 ("Nor is it proper at this stage for the court to make such a merits

9

determination, judging the credibility of each parties' declarants."); see also *Russell v. Ill. Bell. Tel. Co.,* 575 F.Supp.2d 930, 935 n. 3 (N.D. Ill. 2008) ("t[T]he Court's role at this stage is not to assess any party's credibility").

## 2.    The Second Stage Analysis: More Stringent Review

"If Plaintiffs are able to satisfy their initial burden, notice may be issued to prospective plaintiffs who may opt in to the action. Then, when discovery is closed, the case moves to the second step." *Kurgan, supra,* 2014 WL 642092 at *3; see also *Myers, supra,* 624 F.3d at 555. "In the second stage, following the completion of the opt-in process and merits-related discovery, the defendant may ask the court to reevaluate the conditional certification to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis." *Madden, supra,* 2009 WL 4757269 at 2 (citing *Howard v. Securitas Sec. Servs., USA, Inc.,* 2009 WL 140126 (N.D. Ill. Jan 20, 2009); and *Jirak,* 566 F.Supp.2d at 848). "On the more robust record, the Court determines whether the so-called 'collective action' may go forward by assessing 'whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Kurgan, supra,* at *3  *Id.*; see also *Myers,* at 555 ("At the second stage, the district court will, on a fuller record, determine whether a so-called "collective action" may go forward ..."). "The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." *Id.*

"At the second stage, the court considers (1) whether the plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to individually applied to each plaintiff; and (3) fairness and procedural concerns." *Kurgan, supra,* 2014 WL 642092 at *3 (citing *Strait, supra,* 911

F.Supp.2d at 718. The second stage "is where the certification becomes more akin to the familiar Rule 23 class certification standard." *Id.* (citing *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013)). "[I]t is not until the conclusion of the opt-in process and class discovery 'that the court more rigorously reviews whether the representative plaintiff and the putative claimants are in fact similarly situated so that the lawsuit may proceed as a collective action.'" *Id.* (citing *Tamas v. Family Video Movie Club, Inc.*, 2013 WL 4080649 at *3 (N.D. Ill. Aug. 13, 2013); see also *Brown v. Club Assist Rd. Serv. U.S., Inc.*, 2013 WL 5304100 at *12 (N.D. Ill. Sept. 19, 2013).

**C.** **Based on the Evidence Submitted, Plaintiffs Have Met Both the Lenient and Intermediate Standards to Carry Them Past The First Stage of the Conditional Certification Process.**

Here, Plaintiffs have made the minimal "modest factual showing"—indeed, have made a "modest plus" showing—sufficient to carry them past the first stage of the conditional certification process, identifying for the Court and Defendants a group of potentially similarly-situated plaintiffs who may be discovered by sending opt-in notices.

At this stage, Plaintiffs have demonstrated a "factual nexus" between themselves and the FLSA class members. Plaintiffs have presented sufficient evidence that Defendants employed a uniform, company-wide policy of pressuring and intimidating PTs to work "off the clock" and incentivizing DHs to ensure PTs do not "hit draw." Plaintiffs "have demonstrate[d] ... a common policy or plan that, if proven, affects the proposed group and provides the 'factual nexus' between Plaintiffs and the FLSA Class members in regards to the minimum wage violations under the FLSA. *Madden, supra,* 2009 WL 475269 at *2 (conditionally certifying case in which plaintiffs were allegedly discouraged and pressured not to report all hours

11

worked). Courts within the Northern District of Illinois "regularly allow Plaintiffs to pursue collective actions under the FLSA where they allege that an employer has an unwritten policy requiring its employees to perform uncompensated work 'off the clock.'" *Id.* (citing *Howard v. Securitas Sec. Servs., USA, Inc.,* 2009 WL 140126 at *1 (N.D. Ill. Jan 20, 2009) [plaintiffs alleged employer required them to complete training, maintain uniforms, and work before and after shifts off the clock]; *Russell v. Illinois Bell Telephone Co.,* 575 F.Supp.2d 930, 933 (N.D. Ill. 2008) [plaintiffs alleged employer required work during meal and rest breaks]; *Heckler v. DK Funding, LLC,* 502 F.Supp.2d 777, 779 (N.D. Ill. 2007) [plaintiffs alleged that employer required work at home on weekends and even manually edited employee time records if overtime was "unapproved"]); see also *Anyere, supra,* 2010 WL 1542180 at *3 (plaintiffs alleged that employer had an unwritten de facto policy of not paying overtime hours).

In addition, Plaintiffs have presented evidence that the PTs are subject to a uniform, company-wide policy misclassifying them as exempt from overtime compensation under 29 U.S.C. § 207(i) (the commission exemption). *See e.g., Jirak, supra,* 566 F.Supp. at 849 (FLSA conditional certification where class of pharmaceutical representatives alleged they were uniformly misclassified by their employer); *see also Kurgan,* 2014 WL 642092 at *4 (FLSA conditional certification where class of Chiropractic Technicians alleged they were improperly misclassified during portion of class period). Indeed, in its Answer to Plaintiffs' Complaint, Defendants assert the same exemption defense against all PTs; thus, treating them as a cohesive group for purposes of determining whether they were misclassified as exempt. *Id.* In addition to uniformly classifying all PTs as exempt from overtime, numerous other factual similarities exist. Defendants paid the PTs under the same compensation scheme. Defendants gave PTs the same uniform training. During the short training periods, PTs were paid an hourly wage and even

12

earned overtime when they worked more than 40 hours in a week. *See* Defendants' Answer [Doc. No. 101], ¶¶ 19, 29 (PTs "were paid overtime for any work they performed such as training in weeks in which they worked more than 40 hours."). After the training period was over, Defendants uniformly reclassified PTs as exempt from overtime under the commission exemption. After PTs were reclassified as exempt, Defendants did not pay them any overtime. Plaintiffs have also demonstrated that PTs were performing regimented duties, most of which could not earn them a commission. By uniformly classifying PTs as exempt and failing to accurately record the total hours worked by PTs, Plaintiffs have shown that there are "similarly situated" FLSA Class members who should be given notice of the potential FLSA violations and an opportunity to opt in. *See, e.g., Betancourt v. Maxim Healthcare Servs., Inc.*, 2011 WL 1548964 *6 (N.D. Ill. Apr. 21, 2011) (uniform classification of staffing recruiters as exempt supported conditional certification); *Kurgan, supra,* 2014 WL 642092 at *4 (uniform classification of Chiropractic Technicians as exempt supported conditional certification); *Jirak, supra,* 566 F.Supp.2d at 849-850 (uniform classification of pharmaceutical representatives as exempt supported conditional certification); *Vaughan v. Mortgage Source LLC,* 2010 WL 1528521 at *4–5 (E.D.N.Y. Apr. 14, 2010) (uniform failure to record plaintiffs' time worked supported certification); *Pefanis v. Westway Diner, Inc.,* 2008 WL 4546526 at *1 (S.D.N.Y. Oct. 8, 2008) (same); *Smallwood v. Illinois Bell Tel. Co.,* 710 F.Supp.2d 746, 752 (N.D. Ill. 2010) ("A common policy or plan appears to exist because [all employees in the challenged position] were uniformly reclassified as non-exempt employees, making them eligible for overtime"). Accordingly, sufficient evidence has been submitted by Plaintiffs to demonstrate that they and others were subject to unlawful common policies or course of conduct by Defendants. Under either the "modest" or "modest plus" standard, Plaintiffs have met the standard for FLSA

certification and the issuance of notice advising prospective opt-in plaintiffs of their rights and the opportunity to opt-in should they believe, upon receiving the notice, that they have a claim.

## IV. CONCLUSION

For all of the foregoing reasons, Plaintiffs have met all of the requirements of conditional collective action certification under 29 U.S.C. § 216(b). Plaintiffs respectfully request that this Court order the prompt dissemination of notice so that prospective FLSA Class members can opt-in to this action. A proposed FLSA notice is attached to the Motion as Exhibit L.

Dated: September 30, 2015

Respectfully Submitted,
Plaintiffs


By: s/ *Jerusalem F. Beligan*
Brian D. Chase (*pro hac vice* pending)
Jerusalem F. Beligan (admitted *pro hac vice*)
BISNAR CHASE LLP
1301 Dove Street, Suite 120
Newport Beach, CA 92660
Telephone: (949) 752-2999
Facsimile: (949) 752-2777
Email: bchase@bisnarchase.com
      jbeligan@bisnarchase.com

Branigan A. Robertson (admitted *pro hac vice*)
Branigan Robertson, Inc.
9891 Irvine Center Drive, Suite 200
Irvine, CA 92618
Telephone: (949) 275-7378
Email: branigan@brobertsonlaw.com

Michael L. Fradin
Law Office of Michael L. Fradin
8401 Crawford Avenue, Suite 104
Skokie, IL 60076
Telephone: (847) 664-3425
Facsimile: (847) 673-1228
Email: mike@fradinlaw.com

14