# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JARED STEGER, DAVID RAMSEY, JOHN CHRISPENS, and MAI HENRY, individually and on behalf of all others similarly situated, | ) ) ) ) | Case No. 14-cv-6056 |
| Plaintiffs, | ) ) | Judge Sharon Johnson Coleman |
| v. | ) ) ) | |
| LIFE TIME FITNESS, INC., a Minnesota corporation, LTF CLUB MANAGEMENT COMPANY, LLC, a Delaware Limited Liability Company, and LTF CLUB OPERATIONS COMPANY, INC., a Minnesota corporation, and DOES 1 to 10, inclusive, | ) ) ) | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Jared Steger, David Ramsey, John Chrispens, and Mai Henry ("plaintiffs"), acting

on behalf of themselves and all others similarly situated, filed an amended complaint against

defendants Life Time Fitness, Inc., LTF Club Management Company, LLC, LTF Club Operations

Company, Inc., and ten unnamed individuals (together "defendants"), alleging claims under the Fair

Labor Standards Act and California and Illinois state law. The plaintiffs now move for conditional

certification of their proposed class and judicial notice to the class pursuant to section 216(b) of the

Fair Labor Standards Act. For the reasons set forth herein, this motion [103] is denied.

**Background**

The defendants operate over one hundred fitness centers throughout the United States.

(Dkt. 112-2 22:20-21). As is pertinent here, the defendants employ personal trainers, Pilates

instructors, Pilates coordinators, metabolic specialists, nutritionists, and dietary specialists, all of

whom the plaintiffs collectively describe as "Personal Trainers" or "PTs." PTs' primary job is to sell

Life Time's personal training services and products and to provide personal training services to Life

Time members. (Dkts. 112–2, 47:11–17; 112–4, 16:3–7, 18:9–20). Additionally, PTs are responsible for performing general duties such as providing free initial consultations, staffing the service desk, cleaning exercise equipment and gym spaces, communicating with managers, and attending meetings and trainings. (Dkts. 105-4 ¶ 6; 105-12 ¶ 6; 105-26 ¶ 8). PTs are paid by commission, which they earn from selling products, setting up appointments, and providing personal training services to members. (Dkt. 112-5, 65:6–66:16).

If a PT does not earn enough in commissions to compensate them time-and-a-half of the applicable minimum wage for the hours that they have worked, Life Time's payroll software automatically pays them that amount. (Dkt. 112-2, 51:1–55:24, 72:22-73:16). The difference between the PT's commissions and their paycheck is known as a "recoverable draw" or "draw," and is carried forward into future pay periods and recovered against future commissions. (*Id.* at 73:12–15, 98:25–99:2). The department heads who supervise PTs are partially compensated based on department revenues, and therefore are negatively impacted when their employees incur such draws. (Dkt. 103-9).

Some PTs were informed that incurring a draw increased the likelihood of being placed on a "Performance Improvement Plan" or being terminated. (Dkt. 103-8; 105-2 ¶ 12). A few PTs also preferred to avoid draws because they did not want their future commissions to be diminished to recoup the draw. (Dkt. 105-16, ¶ 14; 105-17 ¶ 14). There were also department heads who explicitly instructed PTs to underreport their hours or to only report the hours that they spent servicing clients so as to avoid incurring draws. (Dkt. 105-5, ¶ 8; 105-26, ¶ 7; 105-20, ¶ 7). Thus, some PTs underreported their work hours, based at least in part on either the threat of disciplinary action or the direct instructions of their supervisors. (Dkt. 105-16, ¶ 14; 105-17 ¶ 14). However, Life Time's official policy, as set forth in its Team Member Handbook, required that all employees accurately

report their hours, and even those PTs who misreported their hours were aware of that policy. (Dkts. 112-25, 15; 112-3, 88:1-89:13, 102:13-18; 112-5 38:3-39:10).

This case consolidates a complaint filed by plaintiffs David Ramsey and Jared Steger in the Circuit Court of Cook County and one filed by plaintiffs John Chrispens and Mai Henry, among others, in the United States District Court for the Central District of California. By agreement of the parties, discovery in this matter was bifurcated into two phases, the first of which was limited to those issues relevant to class certification and the claims of the named plaintiffs. (Dkt. 62). That phase of discovery has since been completed. (Dkt. 78). The plaintiffs now move for conditional certification of a class consisting of:

> All individuals in positions, job titles, job codes, job classifications, or job descriptions of "Personal Trainer" and all other similar nomenclature (including, but not limited to, Personal Trainers, Pilates Instructors, Dietary Technicians, and other similar positions within the Personal Training department) performing substantially identical functions and/or duties, currently or formerly employed by Defendants in the United States who were not paid the minimum wage or overtime for all hours worked.

As the factual nexus for this class, plaintiffs allege both that (1) Life Time had an uniform, unofficial policy of pressuring employees to work off the clock and (2) Life Time uniformly misclassified the class members as exempt from overtime compensation under 29 U.S.C. § 207(i).

**Legal Standard**

Section 216(b) of the Fair Labor Standards Act ("FLSA") authorizes employees to act together to seek redress for violations of the statute's minimum wage and maximum hour provisions. Unlike a Rule 23 class action, a FLSA collective action requires that the unnamed plaintiffs opt in to be bound, rather than, as in a class action, opting out to not be bound. *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 877 (7th Cir. 2012).

Courts of this Circuit employ a two-step process for determining whether an FLSA lawsuit should proceed as a collective action. *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 847 (N.D. Ill.

2008).  At the first stage, "the court makes an initial determination to send notice to potential opt-in plaintiffs who may be similarly situated to the named plaintiffs with respect to whether an FLSA violation has occurred."  *Kurgan v. Chiro One Wellness Ctrs. LLC*, No. 10-cv-1899, 2014 WL 642092 at *3 (N.D. Ill. Feb. 19, 2014) (Dow, J.).  To meet this burden, plaintiffs must make a "modest factual showing" sufficient to demonstrate that they and the potential plaintiffs were victims of a common policy or plan that violated the FLSA.  *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003) (Norgle, J.).  At the second stage, "following the completion of the opt-in process and merits-related discovery, the defendant may ask the court to reevaluate the conditional certification to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis."  *Madden v. Corinthian Colls., Inc.*, No. 08-cv-6623, 2009 WL 4757269, at *2 (N.D. Ill. Dec. 8, 2009) (Hibbler, J.).

However, when limited discovery has been completed as is the case here, the lenient standard applied at the first stage is heightened to an intermediate standard more stringent than the first-step certification standard but more lenient than the second-step decertification standard.  *Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 856 (N.D. Ill. 2013).  Under the heightened standard, both parties' evidentiary submissions are considered in determining whether there is a group of similarly situated employees that may be discovered by sending opt-in notice.  *Id.* at 856.  But in evaluating each side's submissions, it must be kept in mind that, despite the discovery that has been allowed, the defendants still have greater access to evidence than the plaintiffs, and that the plaintiffs' showings therefore need not be conclusive.  *Id.*  Rather, the plaintiffs need only make a modest factual showing that there is a group of potentially similarly situated plaintiffs that may be discovered by sending opt-in notices.  *Id.*  In determining whether a group of plaintiffs are similarly situated, district courts consider: (1) whether the plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would

have to be individually applied to each plaintiff; and (3) fairness and procedural concerns. *Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004).

**Discussion**

*1. Shared Factual and Employment Setting*

The plaintiffs contend that the members of their putative class are similarly situated with respect to their employment setting because all members of their putative class performed "substantially identical functions and/or duties." However, the testimony of class members shows that the job duties of the putative class members varied depending on job title and certification levels. For instance, the deposition testimony of named plaintiff Jared Steger indicates that, as a metabolic specialist, he spent some of his time training other Life Time employees, a duty that ordinary personal trainers or instructors did not share. (Dkt. 112-3 7:6–13:24). Moreover, Steger was compensated for his conducting those trainings with a percentage of the metabolic department budget, in contrast to personal trainers whose compensation was based solely on commission. (*Id.*). Another plaintiff testified that the value of each employee's commissions varied based on each individual trainer's level of classification and that sale goals were individually set for each employee. (Dkt. 112-4 55:14–56:14; 75:6–18). Thus, the duties and compensation of the putative class members were not substantially identical.

Nor is the putative class similarly situated with respect to the alleged uniform "unwritten, de facto policy of intimidating and pressuring employees to work off the clock." The evidence demonstrates that some department heads informed PTs that they would be placed on a performance improvement plan or terminated if they incurred draw or directly instructed trainers to underreport their hours so as to avoid incurring draw. However, it also demonstrates that some department heads did not do these things, and that some PTs did not misreport their hours. And it showed that it was Life Time's stated corporate policy that all employees must accurately report their

hours, that this policy was enforced, and that at least some of the putative class were aware of this official policy. *Cf. Nieddu v. Lifetime Fitness, Inc.*, 977 F. Supp. 2d 686, 703 (S.D. Tex. 2013) (recognizing that evidence that an employer has and enforces appropriate pay policies weighs heavily against class certification).

Thus, the evidence shows that the proposed class was impacted, not by a uniform if unwritten corporate policy, but rather by the individual actions of specific department heads acting contrary to corporate policy, as moderated by each employee's individual decisions. The pressure that each PT felt to work off the clock depended on his or her location, his or her job title and responsibilities, his or her department head at the particular moment, his or her productivity, and his or her personal decisions. Although two putative plaintiffs might share one or two of these factors in common, a highly individualized analysis would nonetheless be necessary to determine the extent to which each employee worked off the clock and whether that conduct was attributable to Life Time. Because the proposed nationwide class is therefore not similarly situated with respect to the allegation that Life Time had an unofficial corporate policy requiring PTs to work off the clock, it cannot be certified as a class on that basis. *See Griffith v. Wells Fargo Bank, N.A.*, No. 4:11-CV-1440, 2012 U.S. Dist. LEXIS 129937, at *14 (S.D. Tex. 2012) (denying class certification based on an alleged unofficial policy of pressuring employees to work uncompensated hours because that "pressure" was based on the employees' individual abilities and perceptions and their office-specific experiences relating to the actions of supervisors); *see also Carey v. 24 Hour Fitness USA, Inc.*, No. H-10-3009, 2012 U.S. Dist. LEXIS 146471, *2 (S.D. Tex. 2012) (denying conditional certification because an inquiry into whether club managers violated company policy to encourage employees to work off the clock would require extensive individualized analysis).

*2. Individualized Defenses*

Life Time argues that all of the putative class members were exempt from overtime under the commissioned retail salesperson exemption set forth in FLSA section 7(i), while the plaintiffs argue that they were miscategorized as exempt employees under that section. Section 7(i) creates an exemption to federal overtime requirements for retail or service employees who (1) derive more than half of his or her compensation from commissions on goods or services and (2) receive a regular rate of pay in excess of one and one-half times the minimum wage. 29 U.S.C. § 207(i). Courts have noted that section 7(i) is a highly individualized defense, because its application requires week-by-week and other periodic calculations specific to each individual Plaintiff and his or her particular circumstances. *Johnson v. TGF Precision Haircutters, Inc.*, No. Civ.A. H-02-3641, 2005 WL 1994286, at *6 (S.D. Tex. 2005).

Here, the plaintiffs contend that they are not exempt employees under 7(i) because, accounting for the unreported hours that they worked, they did not receive a regular rate of pay in excess of one and one-half times the minimum wage.[1] As was previously discussed, however, the putative plaintiffs are not similarly situated with respect to whether they misreported their hours, when they did so, or how many hours they misreported. Moreover, the record reflects that each plaintiff's compensation would vary based on the amount of commissioned hours they worked, their certification level, the time period in which they worked, and whether or not they were recouping previously earned draws. Thus, the application of section 7(i) would require highly individualized inquiries into each plaintiff's hours and compensation that could not be accomplished by common proof but would instead require "the equivalent of mini-trials" for each Plaintiff. *Id; see also*

---

[1] The plaintiffs also allege that they were misclassified because most of their time was spent on regimented duties for which they could not earn a commission. Without deciding on the validity of this theory, the evidence reflects that PTs' duties, and thus the portion of their time spent earning commission, varied by position, location, manager, and timing. Thus, an individualized determination of each employee's duties would be required and class certification would be inappropriate on this basis. *Reich v. Homier Distrib. Co., Inc.*, 362 F. Supp. 2d 1009, 1013–14 (N.D. Ind. 2005).

*Beauperthuy v. 24 Hour Fitness USA, Inc.*, 772 F. Supp. 2d 1111, 1127 (N.D. Cal. 2011) (decertifying a class based in part on the individualized analysis required to determine if the section 7(i) defense applied to the members of the putative class).

3. *Fairness and Procedural Considerations*

Here, there is no identifiable nexus that binds the potential claims of the putative class such that hearing the claims collectively would promote fairness and judicial efficiency. Rather, the highly individualized inquiries which will be required would substantially eliminate the judicial efficiency, and the resulting benefit to the parties, traditionally attained through the collective treatment of claims. Accordingly, conditional certification of this lawsuit as a collective action is unwarranted.

**Conclusion**

For the foregoing reasons, plaintiff's motion for conditional class certification [103] is denied.


SO ORDERED.

_____
Sharon Johnson Coleman
United States District Court Judge

DATED: January 21, 2016