# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JARED STEGER, DAVID RAMSEY, JOHN CHRISPENS, and MAI HENRY, individually and on behalf of all others similarly situated, | Case No. 14-cv-6056 |
| Plaintiffs, | Judge Sharon Johnson Coleman |
| v. | |
| LIFE TIME FITNESS, INC., a Minnesota corporation, LTF CLUB MANAGEMENT COMPANY, LLC, a Delaware Limited Liability Company, and LTF CLUB OPERATIONS COMPANY, INC., a Minnesota corporation, and DOES 1 to 10, inclusive, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Jared Steger, David Ramsey, John Chrispens, and Mai Henry ("plaintiffs"), acting on behalf of themselves and all others similarly situated, filed an amended complaint against defendants Life Time Fitness, Inc., LTF Club Management Company, LLC, LTF Club Operations Company, Inc., and ten unnamed individuals (together "defendants"), asserting claims under the Fair Labor Standards Act and California and Illinois state law. The plaintiffs subsequently moved for conditional certification of their proposed class and judicial notice to the class pursuant to section 216(b) of the Fair Labor Standards Act. This Court denied that motion. The plaintiffs now move this Court to reconsider that decision. For the reasons that follow, the plaintiffs' motion to reconsider [149] is denied.

## Discussion

Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence. *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996). A manifest error of law exists when a court patently

1

misunderstands a party, makes a decision outside of the adversarial issues presented to the court, or makes an error of apprehension. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). A motion to reconsider may also be appropriate where there has been a controlling or significant change in the law or facts since the submission of the issue to the Court. *Id.*

The plaintiffs first contend that this Court committed a manifest error of law by applying the wrong legal standard to review the plaintiff's motion for conditional class certification.

Courts of this district employ a two-step process for determining whether a FLSA lawsuit should proceed as a collective action. *Jirak v. Abbott Labs., Inc.,* 566 F. Supp. 2d 845, 845 (N.D. Ill. 2008). At the first stage, the court makes an initial determination whether notice should be sent to potential opt-in plaintiffs who may be similarly situated to the named plaintiff. *Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004) (Castillo, J.). To meet this burden, a plaintiff must make a modest factual showing sufficient to demonstrate that she and the potential opt-in plaintiffs were victims of a common policy or plan that violated the FLSA. *Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 855( N.D. Ill. 2013) (Hart, J.). At this stage, the Court does not make merits determinations, weigh evidence, determine credibility, or specifically consider opposing evidence presented by a defendant. *Id.* at 855–56. At the second stage, following the completion of the opt-in process and merits-related discovery, the defendant may ask the court to reevaluate the conditional certification to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis. *Id.* at 856. In conducting that analysis, Courts assess whether the named and putative plaintiffs are similarly situated based on (1) whether the plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to be individually applied to each plaintiff; and (3) fairness and procedural concerns. *Mielke,* 313 F. Supp. 2d at 762.

When a motion for conditional class certification is filed in this district after some discovery has been completed, the lenient standard for conditional certification is heightened to an intermediate standard, under which the court considers the evidence submitted by both parties but requires the plaintiff to make only a modest 'plus' factual showing that there is a group of potentially similarly situated plaintiffs that may be discovered by sending opt-in notices. *Bergman*, 949 F. Supp. 2d at 856. This Court, in assessing whether the named plaintiffs and opt-in members of the class were similarly situated, utilized the *Mielke* factors to assess whether the putative plaintiffs were similarly situated to the named plaintiffs. The plaintiffs contend that doing so constituted a manifest error of law because the *Mielke* factors can only be applied at the second stage of analysis and not at the intermediate stage. The plaintiffs are incorrect. Multiple courts in this district have applied the *Mielke* factors at the intermediate stage in precisely the manner that this Court did. *See, e.g., Babych v. Psychiatric Solutions, Inc.,* No. 09 C 8000, 2011 WL 5507374, at *4 (N.D. Ill. Nov. 9, 2011) (Lefkow, J.) (considering the *Mielke* factors in assessing whether the plaintiffs at the conditional certification stage were similarly situated); *Howard v. Securitas Sec. Servs., USA Inc.*, No. 08 C 2746, 2009 WL 140126, at *2 (N.D. Ill. Jan. 20, 2009) (Gottschall, J.) (applying the *Mielke* factors at the conditional class certification stage); *Molina v. First Line Solutions LLC*, 566 F. Supp. 2d 770, 787 (N.D. Ill. 2007) (Hart, J.) (identifying the *Mielke* factors as factors "that may be considered in determining whether plaintiffs are similarly situated" for conditional certification purposes); *see also Franks v. MKM Oil, Inc.*, No. 10 CV 00013, 2012 WL 3903782, at *10 (N.D. Ill. Sept. 7, 2012) (Chang, J.) (applying the factors without explicitly stating that it was doing so). As Judge Hart explained in *Molina*, "[t]he primary difference between the two stages of litigation is the level of proof required," although, "at the first step, information about particular factors may not be available at all or may not be very well developed." *Molina*, 566 F. Supp. 2d at 788 n. 18. The *Mielke* factors only describe the types of evidence that may be considered; what distinguishes the different stages of analysis is not the type of

3

evidence that is considered but the level of proof that is required. *Howard*, 2009 WL 140126, at *2 (citing *Molina*, 566 F. Supp. 2d at 788 n. 18).

Although this Court applied the modest-plus standard of proof required in conducting an intermediate analysis, it considered the *Mielke* factors to determine whether the evidence presented was sufficient to establish that the putative plaintiffs and named class members were similarly situated. The *Mielke* factors were particularly relevant because the parties had engaged in lengthy discovery concerning the appropriateness of conditional class certification, and evidence was therefore available beyond what would ordinarily be available to a court conducting a first-stage analysis. *See Franks,* 2012 WL 3903782 at *10 (noting that it made "no sense" to treat a motion for class certification as being at the conditional certification stage where the parties had engaged in extensive class certification discovery). In light of the precedent for considering the *Mielke* factors as it did, this Court rejects the plaintiffs' assertion that it committed a manifest error of law.[1]

The plaintiffs alternatively contend that this Court should reconsider its decision in light of the Supreme Court's ruling in *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 194 L.Ed.2d 124 (2016). In *Tyson Foods*, the Supreme Court upheld the use of representative statistical evidence to calculate the amount of unpaid overtime that employees incurred donning and doffing their protective gear. But there was, and is, no representative statistical evidence before this Court to support conditional class certification. Although the plaintiffs contend that they are entitled to conditional class certification based on the possibility that they will be able to obtain and employ such evidence at the decertification stage, this Court does not perceive anything in *Tyson* so holding. *Tyson* merely confirms that such representative evidence, where otherwise properly presented and determined to

---

[1] This Court notes that even if it had reconsidered its prior decision under the standard that the plaintiffs assert, its decision would have been unchanged. As the plaintiffs repeatedly asserted throughout their briefs, they are not challenging the legality of the defendants' stated compensation policies, but only the alleged unwritten, de facto policy of pressuring employees to work off the clock. The evidence before this Court was insufficient to support a "modest plus" factual showing that the potential opt-in plaintiffs were similarly situated with respect to that policy, for those reasons set forth in this Court's prior opinion.

4

be reliable, may be taken into consideration. *Cf. Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) ("A party may not use a motion for reconsideration to introduce new evidence that could have been presented earlier."). Even if such evidence was available to mitigate the need for individualized analyses of the applicability of the 207(i) exemption, moreover, this Court's analysis of the first and third *Mielke* factors would remain unchanged.[2] Accordingly, *Tyson* does not compel this Court to reconsider its prior ruling.

For the foregoing reasons, the plaintiffs' motion for reconsideration [149] is denied.

SO ORDERED.

_____
Sharon Johnson Coleman
United States District Court Judge

DATED: November 10, 2016

---

[2] This Court notes that it is skeptical that representative evidence would be as beneficial as the plaintiffs contend. Although *Tyson* involved multiple types of employee, it only involved a single policy and a single location. Here, by contrast, the proposed class includes multiple types of employees, from over a hundred locations, all of whom worked under different managers at different times and thus were subject to different policies.