**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JARED STEGER, DAVID RAMSEY, JOHN CHRISPENS, and MAI HENRY | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 14-cv-6056 |
| | ) | |
| LIFE TIME FITNESS, INC., a Minnesota corporation; LTF CLUB MANAGEMENT COMPANY, LLC, a Delaware Limited Liability Company; and LTF CLUB OPERATIONS COMPANY, INC., a Minnesota Corporation; and DOES 1 to 10, Inclusive, | ) ) ) ) ) ) ) ) | Judge Sharon Johnson Coleman

Magistrate Judge Jeffrey Cole |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |
| COLLIN WIERSEMA, individually, and on behalf of all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:17-cv-01585 |
| | ) | |
| LIFE TIME FITNESS, INC., a Minnesota corporation; LTF CLUB MANAGEMENT COMPANY, LLC, a Delaware Limited Liability Company; and LTF CLUB OPERATIONS COMPANY, INC., a Minnesota Corporation; and DOES 1 to 10, Inclusive, | ) ) ) ) ) ) ) ) | Judge Sharon Johnson Coleman |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

Brian D. Chase (*pro hac vice* pending)
Jerusalem F. Beligan (admitted *pro hac vice*)
BISNAR CHASE LLP
1301 Dove Street, Suite 120
Newport Beach, CA 92660
Telephone: (949) 752-2999
Facsimile: (949) 752-2777
Email: bchase@bisnarchase.com
          jbeligan@bisnarchase.com

Michael L. Fradin
Law Office of Michael L. Fradin
8401 Crawford Avenue, Suite 104
Skokie, Illinois 60076
Telephone: (847) 664-3425
Facsimile: (847) 673-1228
Email: mike@fradinlaw.com

Branigan A. Robertson (admitted *pro hac vice*)
Branigan Robertson, Inc.
9891 Irvine Center Drive, Suite 200
Irvine, CA 92618
Telephone: (949) 275-7378
Email: branigan@brobertsonlaw.com


***Counsel for Plaintiffs***

## TABLE OF CONTENTS

Page

I.     **INTRODUCTION**………………………….........................................1

II.    **DESCRIPTION OF SETTLEMENT**...........….......................................1

III.    **FACTUAL BACKGROUND**...........................................................2

      A.    The Parties…………………………………………………….............2

          1.   Defendants Lifetime Fitness, Inc., LTF Club Management Company,

              LLC, and LTF Club Operations Company, Inc. .......……………….....2

          2.   California Named Plaintiffs (Proposed Class Representatives) ..........…3

      B.    Plaintiffs' Claims Against Defendants...……………………………….3

      C.    Life Time Did Not pay Personal Trainers The Minimum Wage for Each And

          Every Hour of Work.......................………………………………….3

      D.    Life Time Did Pay Personal Trainers Overtime For Work Performed in

          Excess of 8 Hours in a Workday or More Than 40 Hours in a

          Workweek..........................................……………………………4

      E.    Life Time Did Not Provide Uninterrupted Meal or Rest Periods to Personal

          Trainers..........................................……………………………4

      F.    Life Time's Vacation Policy Violates California Law….......……………4

IV.    **PROCEDURAL BACKGROUND**.......................................................5

      A.    The Operative Pleadings.......………………………………………..5

      B.    The Discovery Conducted in This Case………………………………...5

          1. Depositions...........................................…………………………5

          2. Consultation With Expert Economists.........................................6

          3. Comprehensive Data Analysis and Mediation Preparation........................6

      C.    Mediation With Experience Class-Action Wage-and-Hour Mediator Mark S.

          Rudy.......................................………………………………....6

      D.    Evaluation of the Strength of the Settlement Class's

          Claims.............………………………………………………….6

V.    **SUMMARY OF PROPOSED SETTLEMENT TERMS**………………………...7

      A.    Gross Settlement Amount...…………………………………………..7

      B.    Net Settlement Amount...…………………………………………...7

C.      Formula for Distribution to Participating California Class Members………..7

D.      Released Claims……………………………………………………...8

E.      Claims Administrator and Notice Packet to the Class………………………9

VI.     **THE COURT SHOULD PRELIMINARILY APPROVE THE CLASS ACTION SETTLEMENT AND SET A FINAL FAIRNESS HEARING DATE**………………...……………………………………………………10

A.      Strength of Plaintiffs' Case and the Risk, Expense, Complexity and Likely Duration of Further Litigation……………………………………………...13

B.      The Extent of Discovery and Stage of the Proceedings Support the Settlement………………………………………………………………...14

      1.     Prior to Filing the Complaint………………………………………14

      2.     After Filing the Complaint…………………………………………15

C.      The Settlement is the Product of Serious, Informed and Non-Collusive Negotiations; Class Counsel are Experienced in Similar Litigation……......16

D.      The Proposed Settlement Does Not Grant Preferential Treatment…………18

E.      The Proposed Settlement is a Reasonable Compromise of Claims………...18

VII.    **CLASS COUNSELS' ATTORNEYS' FEES REQUEST AND CLASS REPRESENTATIVE SERVICE AWARDS**……………………......................19

A.      Motion for Award of Attorney's Fees and Litigation Costs………………19

B.      Proposed Class Representative Payments to the Named Plaintiffs…………19

VIII.   **THE PROPOSED RULE 23 CLASS SHOULD BE CONDITIONALLY CERTIFIED**………………………………………………………………..20

A.      The Proposed Rule 23 Class Meets the Certification Requirements of Rule 23(a) and (b) for Settlement Purposes………………………………...20

      1.     Rule 23(a)(1)-Numerosity…………………………………………21

      2.     Rule 23(a)(2)-Commonality………………………………………21

      3.     Rule 23(a)(3)-Typicality…………………………………………22

      4.     Rule 23(a)(4)-Adequacy of Representation………………………..23

      5.     Rule 23(b)(3)-Predominance and Superiority……………………..23

IX.     **SCHEDULING A FINAL APPROVAL HEARING IS APPROPIATE**...........24

X.      **CONCLUSION**……………………………………………………………24

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997)..................................................................20

*Armstrong v. Bd. Of Sch. Directors,* 616 F.2d 305 (7th Cir. 1980)..........................................11

*Balasanyan v. Nordstrom, Inc.,* 913 F.Supp.2d 1001 (S.D. Cal. Dec. 20, 2012)....................15

*Berry v. School Dist. Of City of Benton Harbor,* 184 F.R.D. 93 (W.D. Mich. 1998)...............11

*Bittinger v. Tecumseh Prods. Co.,* 123 F.3d 877 (6th Cir. 1997)..................................................22

*Blackie v. Barrack,* 524 F.23d 891 (9th Cir. 1975)........................................................................21

*Boyd v. Bechtel Corp.,* 485 F. Supp. 610 (N.D. Cal. 1979).........................................................17

*Brotherton v. Cleveland,* 141 F.Supp.2d 907 (S.D. Ohio 2001)..............................................20

*Cardenas v. McLane Food Services.,* 796 F.Supp.2d 1246 (C.D. Cal. Jul. 8, 2011)...............15

*Ellis v. Naval Air Rework Facility,* 87 F.R.D. 15 (N.D. Cal. 1980)...........................................18

*Felzen v. Andreas,* 134 F.3d 873 (7th Cir. 1998).........................................................................11

*Fisher Bros. v. Cambridge Lee Industries, Inc.,* 630 F.Supp. 482 (E.D. Pa. 1985).................17

*Glass v. UBS Financial Services,* 2007 U.S. Dist. LEXIS 8476 at \*50-52 (N.D. Cal. Jan. 26, 2007)...............................................................................................................................................20

*James v. City of Dallas,* 254 F.3d 551 (5th Cir. 2001)..................................................................22

*Re Beef Indus. Antitrust Litig.,* 607 F.2d 167 (2d Cir. 1979).........................................................21

*Re Mid-Atlantic Toyota Antitrust Litig.,* 564 F.Supp. 1379 (D.Md. 1983)...........................11

*Re Omnivision Technologies, Inc.,* 559 F.Supp. 2d 1036 (N.D. Cal. 2007)............................17

*Scholtisek v. Eldre Corp.,* 229 F.R.D. 381 (W.D.N.Y. 2005).......................................................22

*Singer v. Becton Dickinson & Co.,* 2010 U.S. Dist. LEXIS 53416 at \*24-26 (S.D. Cal. June 1, 2010)...............................................................................................................................................20

*Van Vranken v. Atlantic Richfield Co.,* 901 F.Supp.294 (N.D.Cal. 1995)...............................20

*Ventura v. New York City Health and Hosp., Inc.,* 125 F.R.D. 595 (S.D.N.Y. 1989).................22

*Weinberger v. Kendrick,* 698 F.2d 61 (2d Cir. 1982).....................................................................21

**FEDERAL STATUTE**

F.R.C.P. Rule 23..............................................................................................................2, 9, 10

F.R.C.P. Rule 23(a)(1)........................................................................................................21

F.R.C.P. Rule 23(a)(2)........................................................................................................21

F.R.C.P. Rule 23(a)(3)........................................................................................................22

F.R.C.P. Rule 23(b)(3)................................................................................................23

F.R.C.P. Rule 23(b)(3)(D)..........................................................................................21

F.R.C.P. Rule 23(a)(4)................................................................................................22

**CALIFORNIA CASES**

*Armenta v. Osmose, Inc.,* 135 Cal.App.4th 314 (2005)............................................15

**CALIFORNIA STATUTES**

Cal. Civil. Code § 1542...............................................................................................9

Cal. Lab. Code § 203...................................................................................................6

Cal. Lab. Code § 226...................................................................................................6

Cal. Lab. Code § 1194.................................................................................................6

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

<u>**INTRODUCTION**</u>

California Named Plaintiffs John Chrispens and Mai Henry ("Plaintiffs") seek preliminary approval of a proposed Class Action Settlement on behalf of the California Named Plaintiffs and the proposed class of individuals employed by Defendants Lifetime Fitness, Inc., LTF Club Management Company, LLC, and LTF Club Operations Company, Inc. ("Defendants") (collectively with Plaintiffs, the "Parties") in California as Personal Trainers and/or Pilates Instructors/Coordinators or similar nomenclature as defined in the Operative Complaint (the "Class") between August 12, 2010 through the date of Preliminary Approval (the "Class Period"). This wage-and-hour putative class action was initially filed in Central District of California on August 12, 2014. On January 15, 2015 a Consolidated Complaint was filed in the Northern District of Illinois, the action styled Jared Steger, *et al*., v. Lifetime Fitness Inc., *et al*. Case No. 1:14-cv-06056 (the "Action" or "Consolidated Complaint"). (Declaration of Jerusalem F. Beligan ["Beligan Decl."], Ex. 1, Consolidated Class Action Complaint.] Defendant answered the Consolidated Complaint on September 24, 2015. (Beligan Decl., Ex. 2, Joint Stipulation of Class Action Settlement and Release of the California Litigation [the "Agreement"], ¶ 1.) The Class involves a total of approximately 135 current and former employees. (Beligan Decl., ¶ 16.)

Plaintiffs and Defendant have reached a full and final settlement of the above-captioned action, which is embodied in the Agreement, subject to this Court's preliminary and final approval.

<u>**DESCRIPTION OF THE SETTLEMENT**</u>

Counsel for the Parties, after litigation and settlement negotiations, agreed to a settlement that is fair, reasonable and favorable to the Class, which includes all members of the Class within the Class Period. This settlement includes, subject to Court approval, Defendant's agreement to pay Plaintiffs and the putative Class through the funding of a Gross Settlement Amount ("GSA") in the total amount of $700,000. This sum includes payments

1

for Plaintiffs' Attorneys' Fees and Costs, Claims Administration Expenses for dissemination of the Class notice and performing settlement administration, and the proposed Class Representative Enhancement Payments to the California Named Plaintiffs (the "Settlement"). (Beligan Decl., Ex. 2, Agreement, ¶ 9.) The employer's share of payroll taxes owed on the portion of the Individual Settlement Payments to Participating California Class Members will be paid out of the Net Settlement Amount. (*Id.*, ¶ 11.)

As discussed further below, this is a good result for the Class members. The primary claims were that Defendants failed to provide accurate wage statements, illegally deducted business losses and shortages from wages, failed to pay minimum wage, failed to pay overtime, failed to provide meal and rest periods, forfeited vested vacation wages, failed to timely pay all wages upon resignation or termination of employment and violation of California's Unfair Competition Law. (Beligan Decl., Ex. 1.) Liability in this case was uncertain. Defendants challenged several elements of Plaintiffs' claims, such as Defendants vehemently disputed the appropriateness of class certification and continue to assert that they complied at all times with the applicable labor codes, regulations, wage orders and other state and federal laws that might apply to the present dispute.

For purposes of the proposed Settlement, Plaintiffs seek certification of the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), the appointment of Plaintiffs' attorneys as Class Counsel, the appointment of Plaintiffs as the Class Representatives, and the appointment of ILYM|Group, Inc. as the Claims Administrator to administer notice to the putative Class which will inform them of the proposed Settlement, their right to opt-out of the Rule 23 Class, or object to the proposed Settlement. Plaintiffs also respectfully request that the Court set a date for a Final Fairness and Approval Hearing.

III.     **FACTUAL BACKGROUND**

    A.     **The Parties.**

        1.     **Defendants Lifetime Fitness, Inc., LTF Club Management Company, LLC, and LTF Club Operations Company, Inc.**

2

Defendants own and operate fitness centers throughout the United States. Defendants employed Plaintiffs and currently employs roughly 3,000 PTs in over 106 fitness centers in 26 states. (Beligan Decl., ¶ 17.)

2.     **California Named Plaintiffs (Proposed Class Representatives).**

Plaintiffs are members of the Class, former employees of Defendants, and worked as Personal and Pilates Trainers in California. (Declaration of John Chrispens ["Chrispens Decl."], ¶ 4.; Declaration of Mai Henry ["Henry Decl."], ¶ 4.) Plaintiffs and members of the Class provided personal training services to Defendants' customers.

B.     **Plaintiffs' Claims Against Defendants.**

The members of the Class are paid on a commission basis, subject to a base hourly wage. (Beligan Decl., ¶ 18.) Plaintiffs alleges Defendants paid members of the Class entirely via commission. Defendants calculate the employees' commissions at the end of each pay period and compares their commissions with the guaranteed wage they would have received had they been working at an hourly rate. (*Id.*) However, if the employee does not make enough in commissions to cover 1.5 times the minimum wage for the hours they work, Defendants temporarily pay them a "draw." However, Defendants keep track of all the money they have paid employees via the draw and "recoup" (deduct) the amounts they have paid employees in draw in a later paycheck. Plaintiffs alleged that this diluted the employees rate of pay for the pay period (in which the draw was accrued) below the 1.5 times. (*Id.*)

1..     **Plaintiffs Allege Life Time Did Not Pay Personal Trainers The Minimum Wage For Each And Every Hour of Work.**

Plaintiffs alleged that Defendants did not want to pay the minimum-wage draw to Personal Trainers because it was a cost to the business which affected profitability. Defendants held its department heads "personally liable" if Personal Trainers did not make sufficient commissions to meet the draw. Defendants instructed its department heads to have Personal Trainers clocked in *only* when they were "servicing" clients,

3

regardless of the amount of time actually worked. Managers instructed and threatened Personal Trainers not to incur draw because the draw would be deducted from the managers' wages. Thus, even though Personal Trainers were in the fitness centers under the control of Life Time performing work, they did not clock in. Personal Trainers who did take draw were instructed not to, and if they did not comply, they were fired. (Beligan Decl., ¶ 19.)

> **2. Plaintiffs Allege Life Time Did Not Pay Personal Trainers Overtime For Work Performed in Excess of 8 Hours in a Workday or More Than 40 Hours in a Workweek.**

Plaintiffs alleged that Personal Trainers were required to work more than 8 hours in a workday and more than 40 hours in a workweek performing, among other things, training clients, attending mandatory meetings, completing tutorials, quizzes, videos and certifications, training courses, and cleaning the equipment in the fitness centers. Personal Trainers, however, were never paid overtime. Personal Trainers were instructed that they could work more than 40-hours, but they could not be clocked in for more than 40-hours. Because Life Time did not want to pay the minimum-wage draw—let alone overtime—Personal Trainers were forced to perform these duties "off the clock." Personal Trainers were not paid overtime for any work in excess of 8 hours in a workday or 40 hours in a workweek. (Beligan Decl., ¶ 20.)

> **3. Plaintiffs Allege Life Time Did Not Provide Uninterrupted Meal or Rest Periods to Personal Trainers.**

Plaintiffs alleges Life Time did not have a policy or practice of providing 30-minute, uninterrupted meal periods to Personal Trainers, during which they are free to leave the fitness centers and completely relieved of all duty. Life Time also lacked a policy of providing rest periods to Personal Trainers. As such, all time spent by Personal Trainers at the fitness centers must be counted as hours worked in calculating minimum and overtime wages. In addition, the California Plaintiffs and members of the California class are entitled

4

to an additional hour of pay for each meal and rest period to which they were entitled, but not provided. (Beligan Decl., ¶ 21.)

### F. Life Time's Vacation Policy Violates California Law.

Defendants' vacation or Paid Time Off ("PTO") policy violates California's prohibition against "use it or lose it" vacation policies. According to Defendants' PTO policy, "[a]ccrued and unused PTO is *not* carried over from year to year, so Team Members should use all of their PTO prior to December 31. Accrued and unused PTO is *not* cashed out at time of separation or status change from full-time to part-time, unless specified by law" (emphasis added). Defendants' policy is facially invalid and has resulted in California Personal Trainers losing vested PTO or vacation days. (Beligan Decl., ¶ 22.)

## IV. PROCEDURAL AND FACTUAL BACKGROUND

### A. The Operative Pleadings

On August 12, 2014, Plaintiff filed the initial class-action complaint in the Central District Court of California, styled John Chrispens, et al., v, Lifetime Fitness Inc., et al., Case No. 8:14-cv-01280-AG-DFM., a Consolidated Complaint was filed on January 15, 2015 in the Northern District of Illinois, styled Jared Steger, et al., v. Lifetime Fitness Inc., et al., Case No. 1:14-cv-06056 and alleging Defendant failed to pay for all overtime hours worked, unlawful deductions, failed to provide compliant meal-and-rest periods, failed to provide accurate wage statements, and other derivative claims emanating from the primary wage violations. Defendant answered the amended complaint on September 24, 2015.

### B. The Discovery Conducted in This Case

### 1. Depositions

On May 19, 2015, Plaintiff noticed the deposition of the persons most knowledgeable (30(b)(6)) on Defendant's policies, procedures and practice relating to

assigned patients, jobs, tasks, overtime, meal-and-rest periods, and wage statements. The all-day deposition took place on May 28, 2015 in Bloomington, Minnesota. (Beligan Decl. ¶ 24.)

### 2. Consultation With Expert Economists

Prior to mediation, Plaintiff's counsel consulted with an expert economist to assist in arriving at potential values for each claim presented, assuming Plaintiff prevailed on each claim at trial. (Beligan Decl. ¶ 25.)

### 3. Comprehensive Data Analysis and Mediation Preparation

Prior to the mediation, Plaintiff's attorneys also analyzed thousands of pages of time and payroll records, wrote an extensive brief for the mediator, interviewed class members, and worked heavily with experts. (Beligan Decl. ¶ 26.)

## C. Mediation With Experienced Class-Action Wage-and-Hour Mediator Mark S. Rudy

Armed with substantial information, the Parties initially mediated this case with well-respected, wage-and-hour class action mediator, Mark S. Rudy, on August 29, 2016 in San Francisco, California. Prior to and after the mediation, Plaintiff and Defendant prepared and provided Mr. Rudy with comprehensive mediation briefs and damages models. The case settled did not settled at the mediation but negotiations continued long after. (Beligan Decl. ¶ 27.)

## D. Evaluation of the Strength of the Settlement Class's Claims

Plaintiff's primary-wage claims boil down to the following categories: (1) violation of the Fair Labor Standards Action ("FLSA") that relate to California Class Members; (2) failure to provide accurate wage statements (LC § 226); (3) illegal deduction of business losses and shortages from wages (LC §§ 221 and 224); (4) failure to pay the minimum wage (LC § 1194); (5) failure to pay overtime (LC § 1194); (6) failure to provide required meal-and-rest breaks (LC §§ 226.7, 512, IWC Wage Order no. 5); (7) forfeiture of vested vacation wages (LC § 227.3); (8) failure to pay all wages upon resignation or termination of

6

employment (LC § 203); and (9) violation of California's Unfair Competition Law (the "UCL") (Business & Professions Code ["BP&C"] § 17200, et seq.).

As result, to avoid the risks associated with further litigation in this action, the Parties agreed to settle this case for $700,000. (Beligan Decl. ¶ 28.)

## V.    SUMMARY OF PROPOSED SETTLEMENT TERMS

A.    **Gross Settlement Amount**  The parties agreed (subject to and contingent upon approval of this Court) that this action be settled and compromised for the GSA of $700,000.00, which sum includes (1) Plaintiffs' Attorneys Fees in an amount not to exceed 35% of the GSA or rather $245,000; (2) Plaintiffs' Litigation Expenses not to exceed $50,000; (3) Class Representative Enhancement Payments of $10,000 to each California Named Plaintiff; (4) and claims administration expenses to ILYM|Group, Inc. in an amount not to exceed $20,000.00. (Beligan Decl., Ex. 2, ¶¶ 9, 20, 22-23.)

B.    **Net Settlement Amount.**    After all Court-approved deductions, the remaining sum ("NSA") estimated at $375,000 will be distributed to Participating California Class Members who return valid and timely Claim Forms (the "Claim Form").[1]  To the extent there is any residue representing unclaimed amounts by any California Class Member, the residue will be paid out as follows: (1) to the payment or reimbursement of Defendant's payroll tax obligations arising out of distribution to the Participating California Class Members (Beligan Decl., Ex. 2, ¶ 10.)

C.    **Formula for Distribution to Participating California Class Members.**
Individual Settlement Payments will be calculated and apportioned from the NSA based on the number of Workweeks a California Class Member worked during the California Class Period. As such, Defendants will calculate the number of Workweeks worked by each

---

[1]  One-third (1 /3) of Settlement Payments shall be allocated to each Participating California Class Member's respective wage or potential wage claims and shall be subject to payroll withholding and two-third (2/3) shall be allocated to each Participating California Class Member's respective claims or potential claims for penalties and interest, and shall not be subject to withholding. (Beligan Decl., Ex. 2, ¶ 51.)

California Class Member ("Individual Workweeks") and the number of Workweeks worked as a Personal Trainer and/or Pilates Instructors/Coordinators or similar nomenclature as defined in the Operative Complaint by all California Class Members ("Class Workweeks") during the California Class Period. (Beligan Decl., Ex. 2, ¶ 35(a).) To determine each California Class Member's Individual Settlement Payment, the Claims Administrator will use the following formula: Individual Settlement Payment = (Individual Workweeks/Class Workweeks) x NSA. (Beligan Decl., Ex. 2, ¶ 35(b).) If the total Individual Settlement Payments actually claimed by Participating California Class Members equals less than 50% of the NSA, the Individual Settlement Payments will proportionately increase for each Participating California Class Member submitting a Claim Form such that the total Individual Settlement Payments equal not less than 50% of the NSA. (Beligan Decl., Ex. 2, ¶ 35(c).) The Individual Settlement Payment will be reduced by any required deductions for each Participating California Class Members as set forth herein, including employee tax withholdings or deductions. (Beligan Decl., Ex. 2, ¶ 35(d).)

      **D.    Released Claims.** The nature and scope of the release of claims was negotiated at length and forms a critical role in the settlement of this case. Accordingly, the Settlement Class Members who turn in a valid and timely Proof of Claim Form will release:

> All claims that were pled or could have been pled in the California Litigation which arose during the California Class Period against Defendants, including without limitation, statutory, contractual or common law claims for wages, damages, unpaid costs, penalties, liquidated damages, interest, restitution, equitable relief, or any other relief, including without limitation claims based on the following categories of allegations: (a) claims for violation of the FLSA as it relates to California Class Members only; (b) claims for wage statement violations; (c) claims for deduction of business losses and shortages; (d) claims for the nonpayment of the minimum wage; (e) claims for unpaid overtime; (f) claims for meal and rest period violations; (g) claims for the forfeiture of vested vacation wages; (h) claims for the failure to timely pay wages upon discharge or termination of employment; and (i) claims for violation of California's Business & Professions Code § 17200, *et seq.*

**E.     Claims Administrator and Notice Packet to the Class.**  ILYM|Group, Inc., the Claims Administrator selected by the parties, will conduct a search of the National Change of Address database to update the addresses of the members of the Class, and will thereafter mail to each Participating California Class Member identified by Defendant's employment records, a Notice, Claim Form, and Exclusion Request Form (collectively, the "Notice Packet").  (Beligan Decl., Ex. 2, ¶ 39.)

All California Class Members will be mailed a Notice Packet. Each Notice Packet will provide: (a) information regarding the nature of the California Litigation; (b) a summary of this Settlement's principal terms; (c) the California Settlement Class definition; (d) the total number of Workweeks each respective California Class Member worked for Defendants during the California Class Period in the requisite roles; (e) each Class Member's estimated Individual Settlement Payment and the formula for calculating Individual Settlement Payments; (f) the dates which comprise the California Class Period; (g) instructions on how to submit a valid Claim Form, Exclusion Form, or Notice of Objection; (h) the deadlines by which the California Class Members must submit a Claim Form, Exclusion Form, or file and serve Notice of Objections to the Settlement; (i) the claims to be released, as set forth herein; and G) the date for the final approval hearing. (*Id*., Ex. 2, ¶ 40.)

The Claim Form will contain the Participating California Class Member's personalized information such as his/her name, address, dates of employment, the number of workweeks worked during the California Class Period, and the estimated payment he/she could expect to receive if they returned a signed, dated, and timely Claim Form.  (Beligan Decl., Ex. 2, exh B.)

///

///

///

///

9

**VI.    THE COURT SHOULD PRELIMINARILY APPROVE THE CLASS ACTION SETTLEMENT AND SET A FINAL FAIRNESS HEARING DATE.**

A class action may not be dismissed, compromised, or settled without the approval of the Court.  FRCP Rule 23(e).  The decision to approve or reject a proposed settlement is committed to the Court's sound discretion. Judicial proceedings under Rule 23 have led to a defined procedure and specific criteria for class-action approval.   The Rule 23(e) settlement approval procedure includes three distinct steps: (1) preliminary approval of the proposed Settlement; (2) dissemination of a notice of the settlement to all affected class members; and (3) a formal fairness hearing at which class members may be heard regarding the Settlement, and at which counsel may introduce evidence and present argument concerning the fairness, adequacy, and reasonableness of the Settlement.

This procedure safeguards the due process rights of members of the Class and enables the Court to fulfill its role as the guardian of class interests.  *See* Alba Conte & Herbert Newberg, *4 Newberg on Class Actions* (2002) ("*Newberg*"), §§ 11.22, *et seq.*  By way of this motion, Plaintiffs request the Court take the first step in the Settlement process and preliminarily approve the proposed Settlement.

The purpose of the Court's preliminary evaluation of the proposed Settlement is to determine whether it is within the "range of reasonableness," and thus whether notice to the Class and a formal fairness hearing are appropriate.  *See Newberg* § 11.25.  The *Manual for Complex Litigation* (Fourth) (2004) (the "Manual") characterizes the preliminary approval state as an "initial evaluation" of the fairness of the proposed settlement made by the Court on the basis of written submissions and informal presentation from the settlement parties. *See* Manual § 21.632.

At this stage, the Court is not making a final determination on whether the settlement is fair, reasonable, and adequate, as is ultimately required by FRCP Rule 23(e).  Rather, the Court need only decide whether the settlement "appears to fall within the range of possible approval."  *Armstrong v. Bd. of Sch. Directors*, 616 F.2d 305, 314 (7th Cir. 1980)

[*overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998)]; *see also Berry v. School Dist. of City of Benton Harbor*, 184 F.R.D. 93, 97 (W.D. Mich. 1998) (the court first must determine "whether the proposed settlement is potentially approvable"); *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (likening preliminary approval to a finding that there is "probable cause" to submit the settlement to the class and to hold a full-scale final approval hearing); *Newberg* § 11.25.

Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. Armstrong v. Bd. Of Sch. Dirs. of the City of Milwaukee, 616 F.2d 305, 312–13 (7th Cir. 1980) (noting that "[i]n the class action context in particular there is an overriding public interest in favor of settlement") (citations, quotations, and internal marks omitted), overruled on other grounds by Felzen v. Andreas, 134 F.3d 873 (7th Cir. 1998); Isby v. Bayh, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); see also 4 Herbert B. Newberg & Alba Conte, Newberg on Class Actions ("Newberg") § 11:41 (4th ed. 2002) (citing cases). The traditional means for handling claims like those at issue here — individual litigation — would unduly tax the court system, require a massive expenditure of public and private resources and, given the relatively small value of the claims of the individual Settlement Class Members, would be impracticable. Thus, the proposed Settlement is the best vehicle for Settlement Class Members to receive relief in a prompt and efficient manner.

A court may approve a class action settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). A proposed class settlement is presumptively fair where it "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced." Newberg § 11.41; Am. Int'l Grp., Inc. v. ACE INA Holdings., Nos. 07-2898, 09-2026, 2012 WL 651727, at *2 (N.D. Ill. Feb. 28, 2012) ("A presumption of fairness,

adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (quotation and internal citation omitted).

Approval of a class action settlement is a two-step process. Armstrong, 816 F.2d at 314. At the preliminary approval stage, the question for this Court is whether the settlement falls "within a range of possible approval" and therefore warrants dissemination of notice apprising class members of the proposed settlement. Id. If the Court preliminarily approves the class action settlement, it then proceeds to the second step in the review process – the fairness hearing. Id.; Manual for Complex Litig. § 21.633 (4th ed. 2004).

In assessing the fairness, reasonableness and adequacy of a settlement, courts view the facts in the light most favorable to the settlement. Isby, 75 F.3d at 1199. The Court "should not substitute [its] own judgment as to the optimal settlement terms for the judgment of the litigants and their counsel." Armstrong, 616 F.2d at 315. To evaluate fairness at the preliminary approval stage, courts consider the following factors: (1) the strength of the case for plaintiff on the merits, balanced against the amount offered in settlement; (2) the complexity, length and expense of the litigation; (3) the presence of collusion in reaching a settlement; and (4) the stage of the proceedings and the amount of discovery completed. Synfuel Techs., Inc., 463 F.3d at 653; see also Armstrong, 616 F.2d at 314; Isby, 75 F.3d at 1199. As set forth in the following, the settlement here warrants preliminary approval so that persons in the Settlement Class can be notified of the settlement and provided an opportunity to voice approval or opposition.

A.     **Strength of Plaintiffs' Case and the Risk, Expense, Complexity and Likely Duration of Further Litigation.**

"The most important factor relevant to the fairness of a class action settlement is the first one on the list: the strength of the Plaintiff' case on the merits balanced against the

amount offered in the settlement." Synfuel Techs., Inc., 463 F.3d at 653. Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to Plaintiff." In re AT&T Mobility Wireless Data Servs. Sales Litig., 270 F.R.D. 330, 347 (N.D. Ill. 2010) (citations omitted). Plaintiffs' claims involve complex and disputed legal issues and fact-specific arguments which the parties have litigated fiercely since inception of the Action. Plaintiffs firmly believe in the strength of their claims, but Defendant also has defenses to liability and damages. (Beligan Decl., ¶ 28.) This proposed settlement of $700,000 for 135 class members represents an adequate compromise when balancing the strength of the case with the defenses.

Plaintiffs brought certain claims for violations of California's Labor Code and the FLSA and related statutes. Plaintiffs believe these claims are suitable for Rule 23 certification on the basis that there are state-wide policies (or lack thereof) affecting the Class which could be established using Defendants' records and documentation and representative testimony that would not require separate mini-trials on liability. Furthermore, each of these claims is subject to proof by way of Defendants' California policies, payroll records, and documentation.

On the other hand, Defendants have presented a significant defense to Plaintiffs' claims. Thus, while Plaintiffs believe and continue to believe this is a strong case for Rule 23 certification, there is risk and enormous expense associated with class certification proceedings. Similarly, while Defendants believe Plaintiffs will face several steep hurdles going forward should this matter not resolve, it is also mindful that there are risks and significant expenses associated with proceeding further in the case.

The Settlement was reached as a result of the arms'-length negotiations facilitated by an experienced and well-respected mediator. (Beligan Decl., ¶ 28.) Though cordial and professional, the settlement negotiations have been, at all times, adversarial and non-collusive in nature. Continued good faith, but occasionally contentious, long-term

negotiations were required to ultimately reach agreement. After the agreement was reached-it took many months for the long-form of the settlement agreement to be memorialized.

While Plaintiffs believe in the merits of their case, they also recognize the inherent risks and uncertainty of litigation and understand the benefit of providing a significant settlement sum now as opposed to risking an unfavorable result on the merits at trial and/or on an appeal, a process that can take several more years to litigate. (*Id.*)

**B.      The Extent of Discovery and Stage of the Proceedings Support the Settlement.**

The proposed Settlement is the product of substantial effort by both Parties. As a threshold matter, the factual investigation conducted both before the Action was filed and which continued thereafter was robust. Before the Parties appeared at mediation, a substantial amount of information and documents had been informally exchanged which resulted in sufficient data and information to allow Plaintiffs to extrapolate class-wide damages and to participate in a meaningful mediation. (Beligan Decl., ¶ 29.) An extensive effort was made to speak with a multitude of California class members to collect documents, opt-in signatures, and investigate the class-wide claims. (*Id.*)

The parties thoroughly investigated and evaluated the factual strengths and weaknesses of this case and engaged in sufficient investigation and discovery to support the Settlement. (*Id.*) Thus, the Settlement before this Court came only after the case was throughly investigated by counsel. (*Id.*) This litigation, therefore, has reached the stage where the parties certainly had a clear view of the strengths and weaknesses of their cases sufficient to support the Settlement.

**1.      Prior to Filing the Complaint.**

Substantial investigation, legal research, interviews with Named Plaintiffs, interviews with putative class members, and review of time records, payroll records, and policies and procedures took place prior to the filing of this Action. (*Id.*, ¶ 30.) Plaintiffs were interviewed to ascertain their duties and method of compensation to determine whether

they were being paid lawfully under California law. (*Id.*) In addition, Plaintiffs were requested to produce documents in their possession which supported their claims. (*Id.*) Based on the research conducted, Plaintiffs formed the opinion Defendant's wage practice did not comply with California's minimum-wage obligations. *Armenta v. Osmose, Inc.,* 135 Cal.App.4th 314, 323-324 (2005) (employees must be compensated the minimum wage for "non-productive time"); *Cardenas v. McLane FoodServices, Inc.,* 796 F.Supp.2d 1246, 1252-1253 (C.D. Cal. Jul. 8, 2011) (employees must be paid a separate hourly rate for pre- and-post shift duties not covered by the piece-rate formula); *Balasanyan v. Nordstrom, Inc.,* 913 F.Supp.2d 1001, 1007 (S.D. Cal. Dec. 20, 2012) (commissioned employees must be separately paid the minimum wage for time spent on "non-commission-producing" activities or "non-sell time" work). While Plaintiffs believe they would prevail, there is nothing concrete in litigation.

## 2. After Filing the Complaint.

Subsequent to the filing of the Complaint, the Parties engaged in extensive cooperative discovery and the exchange of documents and information. In addition to the documents produced by Plaintiffs, Defendants provided extensive documents and thousands of pages of class data to Plaintiffs to review and analyze. (*Id.*) With the contact information of members of the putative class, Plaintiffs contacted, interviewed and obtained declarations and additional documentation from members of the putative class. (*Id.*) Plaintiffs were able to obtain employment data for the entire putative Class, policies and documents relevant to the issues in the litigation, and Plaintiffs' wage statements, time records, and personnel files. (*Id.*) After receiving policies and procedures from Defendants, Plaintiffs deposed two corporate witnesses in Bloomington, Minnesota on several topics. (*Id.*)

Plaintiffs were able to use the data provided by Defendants, as well as the information gathered from Plaintiffs and members of the Class, to calculate a damage model for unpaid overtime, unlawful deductions and meal and rest violations. (*Id.*) All of the information obtained during the investigative and discovery phase, allowed the parties to

prepare for a class wide damage model and to prepare for a meaningful mediation on August 29, 2016. (*Id.*)

**C.     The Settlement is the Product of Serious, Informed and Non-Collusive Negotiations; Class Counsel are Experienced in Similar Litigation.**

The requirement that a settlement be fair is designed to prevent collusion among the parties. Mars Steel Corp. v. Cont'l Ill. Nat'l. Bank & Trust Co. of Chicago, 834 F. 2d 677, 684 The requirement that a settlement be fair is designed to prevent collusion among the parties. Mars Steel Corp. v. Cont'l Ill. Nat'l. Bank & Trust Co. of Chicago, 834 F. 2d 677, 684 (7th Cir. 1987) (approving settlement upon a finding of no "hanky-panky" in negotiations). There is an initial presumption that a proposed settlement is fair and reasonable when it was the result of arm's-length negotiations. Newberg, supra, § 11:42; see also Am. Int'l Grp., 2012 WL 651727, at *10.

The proposed Settlement was reached through a fair compromise of disputed claims arrived at through substantial exchange of information and data analysis followed by a full day of arm's-length negotiations before a respected mediator with expertise in the relevant field. Furthermore, proposed Class Counsel, BISNAR|CHASE, LLP, has significant experience in litigating class actions, from employment-related claims to consumer fraud claims and have obtained certification in these types of cases as more fully set forth in their declarations. (Beligan Decl., ¶ 29.) Class Counsel as well as Defendant's counsel, Eric R. Magnus and Nicky Jatana of Jackson Lewis P.C. are particularly experienced in wage-and-hour class actions.

Plaintiffs' Counsel is experienced in class action litigation and had a substantial amount of information to evaluate, negotiate and make well-informed judgments about the adequacy of the Settlement. In Plaintiffs' Counsel's opinion, the Settlement is fair, reasonable and adequate. It is appropriate for the Court to place significant weight on the endorsement of this Settlement by Class Counsel. Counsel exercised their experience based

on an intimate knowledge of the facts of the case and the legal issues facing the Class, including conducting an independent analysis of the strength and weakness of the claims and value of the claims and the time costs, as well as the expense of trials and appeals. When experienced counsel supports the settlement, as they do here, their opinions are entitled to considerable weight. See In re Mexico Money Transfer Litigation, 164 F. Supp. 2d at 1020; Reed v. General Motors Corp., 703 F.2d 170, 175 (5th Cir. 1983). "[J]udges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." Petrovic v. Amoco Oil Co., 200 F.3d 1140, 1148-49 (8th Cir.1999) (citation omitted); Grove v. Principal Mutual Life Ins. Co., 200 F.R.D. 434, 445 (S.D. Iowa 2001); *Fisher Bros. v. Cambridge Lee Industries, Inc.*, 630 F.Supp. 482, 488 (E.D. Pa. 1985); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) [*affd.* 661 F.2d 939 (9th Cir. 1981)]. "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (*citing Boyd v. Bechtel Corp., supra*, 485 F.Supp. 610, 622).

Class Counsel having prosecuted numerous cases on behalf of employees for California Labor Code violations are experienced and qualified to evaluate the Class claims and to evaluate settlement versus trial on a fully informed basis, and to evaluate the viability of the defenses. (Beligan Decl., ¶ 32.) Counsel on both sides share the view that this is a fair and reasonable Settlement in light of the complexities of the case, the state of the law, and of the uncertainties of certification and litigation. (*Id.*) The opinion of counsel in support of the proposed Settlement is based on a realistic assessment of the strengths and weaknesses of their respective cases, extensive legal and factual research, as well as substantial discovery. (*Id.*) The opinion of counsel is also based on an assessment of the risks of proceeding with the litigation through trial and, if a verdict were recovered, through appeal as compared to the certain value of a settlement at this time. (*Id.*) Given the risks inherent in litigation and the defenses asserted, this Settlement is fair, adequate, and reasonable and in the best interests of the class, and should be preliminarily approved. (*Id.*)

17

**D.      The Proposed Settlement Does Not Grant Preferential Treatment.**

No group or member of the proposed Class is discriminated against under the terms of the proposed Settlement.  Nor does the proposed Agreement require a bonus to the California Named Plaintiffs or counsel for the proposed Class.  (*Id.,* ¶ 33.)  It provides only that counsel for the proposed Class may apply to the Court for an award of their attorneys' fees and a reimbursement of their expenses and costs, including the costs of administration, and that Plaintiffs may apply for an enhancement award incurred in connection with the prosecution of this Action.  (*Id.*)  The proposed Agreement does not condition the settlement on the Court's issuance of any such awards.  (*Id.*)

**E.      The Proposed Settlement is a Reasonable Compromise of Claims**.

Based upon information obtained from Plaintiffs and from members of the Class, and after having a joint session during the mediation to reassess the assumptions made by both parties in arriving at their damage model, Plaintiffs assumed Defendants' full exposure to be in the range of $4,621,420.  (*Id.,* ¶ 35.)  This recovery is very reasonable in light of the risks of obtaining an unfavorable decision on summary judgment, certification, or trial.  (*Id.*)

The overall assessment of claim viability, even assuming certification, presented several significant difficulties which included (1) the risk of losing at a summary judgment or trial, and (2) the lack of willingness to participate by some current employees whose role beyond an absent class member (such as a testifying witness or declarant) would cause them to hesitate to assist in the case for fear, whether real or imagined, of retaliation.  (*Id.*, ¶ 37.)  While Plaintiffs' counsel is firmly convinced of the viability of Plaintiffs' claims, this is not a given and Plaintiffs and members of the Class, even certified, could lose and gain nothing at trial.  (*Id.*)  A fair settlement such as this, which provides a certain payout that accounts for an approximation of work offers a way for Defendant to avoid costly further litigation and for members of the Class, including current employees, to receive certain compensation without attenuated circumstances inherent in the employer-employee relationship.  (*Id.*)

18

## VII. CLASS COUNSELS' ATTORNEYS' FEES REQUEST AND CLASS REPRESENTATIVE SERVICE AWARDS.

### A. Motion for Award of Attorneys' Fees and Litigation Costs.

Class Counsels' attorneys' fees and litigation costs incurred pursuing the litigation of this action will also be paid from the GSA. Class Counsel will file a motion requesting reimbursement of their litigation expenses and an award of fees (limited to 35% of the GSA) 15 days prior to the deadline for the Class to file objections. The motion for attorneys' fees and costs will detail the hours expended and the litigation expenses advanced. (Beligan Decl., ¶ 35.)

### B. Proposed Class Representative Payments to the Named Plaintiffs.

According to the Ninth Circuit, "… named plaintiffs … are eligible for reasonable incentive payments. The district court must evaluate their awards individually, using 'relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class had benefitted from those actions, the amount of time and effort the plaintiff in pursuing the litigation and reasonable fears of workplace retaliation.'" *Staton v. Boeing Corp.,* 327 F.3d 938, 977 (9th Cir. 2003).

Subject to the Court's approval at the time of the final fairness hearing, Class Counsel will request on behalf of each named Plaintiff the modest sum of $10,000 for their time, effort, risks undertaken for the payment of costs in the event this Action had been unsuccessful, stigma upon future employment opportunities for having initiated this Action against a former employer, and a general release of all claims related to their employment, which release is broader than the release given by the Class. The requested Class Representative Enhancement Payments are fair and reasonable because each was instrumental in this litigation and in achieving the Settlement in this case. Each Plaintiff invested a great deal of personal time and effort into the investigation, prosecution, and the settlement of the case, as set forth in their respective declarations filed concurrently herewith. The Class Representative Enhancement Payment of $10,000 each is fair and

reasonable. *See, e.g.*, *Singer v. Becton Dickinson & Co.,* 2010 U.S. Dist. LEXIS 53416 at *24-26 (S.D. Cal. June 1, 2010) ("The $25,000 incentive award is … well within the acceptable range awarded in similar cases."); *Brotherton v. Cleveland*, 141 F.Supp.2d 907, 913-14 (S.D. Ohio 2001) (approving $50,000 class representative payment to named plaintiff); *Van Vranken v. Atlantic Richfield Co*., 901 F.Supp. 294, 299 (N.D. Cal. 1995) (same); *Glass v. UBS Financial Services*, 2007 U.S. Dist. LEXIS 8476 at *50-52 (N.D. Cal. Jan. 26, 2007) (approving $25,000 class representative payment].

## VIII.     THE PROPOSED RULE 23 CLASS SHOULD BE CONDITIONALLY CERTIFIED.

### A.     The Proposed Rule 23 Class Meets the Certification Requirements of Rule 23(a) and (b) for Settlement Purposes.

For purposes of the proposed Settlement, the parties also request the Court to provisionally certify the California Settlement Class as defined in the Agreement submitted herewith, to include: all persons who were employed by Defendants in the State of California as a Personal Trainer and/or Pilates Instructor/ or similar nomenclature during the California Class Period.  (Beligan Decl., Ex. 2, ¶ 6.)  The Court has the authority to certify a provisional settlement class at the time of preliminary approval.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); Federal Judicial Center, *Manual for Complex Litigation* § 21.312 (4th ed. 2004); 4 H. Newberg & A. Conte, *Newberg on Class Actions* § 11.27 (4th ed. 2002).  That rule is consistent with the longstanding recognition of the benefits of a certified settlement class.  *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 786 (3d Cir. 1995) ("[M]any courts have indulged the stipulations of parties by establishing temporary classes for settlement purposes only."); *Newberg* § 11.27.  The practical necessity of the device was noted by the Second Circuit in *Weinberger v. Kendrick*, 698 F.2d 61, 72 (2d Cir. 1982):

> "Temporary settlement classes have proved to be quite useful
> in resolving major class action disputes … [M]ost courts have

recognized their utility and have authorized the parties to seek
to compromise their differences ...."

*Id.* at 72 (citations omitted); *Gersh v. Jepson*, 521 F.2d 153, 155, fn. 3 (3d Cir. 1975).

"The determination of a class ... [is a] matter[] within the trial court's judicial discretion." *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 178 (2d Cir. 1979). In determining whether a class should be certified, the court is bound to take the substantive allegations of the complaint as true. *See Blackie v. Barrack*, 524 F.23d 891, 901, fn. 17 (9th Cir. 1975). A proposed settlement class is still subject to the requirements of Rule 23(a) and (b) which are "designed to protect absentees by blocking unwarranted or overbroad class definitions." *Amchem, supra*, 521 U.S. at 620. However, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." *Id.*

All of the factors established by the FRCP are present in this case, making certification of a settlement class appropriate as set forth below.

### 1.      Rule 23(a)(1)—Numerosity:

As set forth above, Plaintiffs are members of the Class. There is a total of 135 putative class members. (Beligan Decl., ¶ 16.) A putative class of approximately 135 class members satisfies the Rule 23(a)(1) numerosity element. *Esler v. Northrop Corp.*, 86 F.R.D. 20, 34 (W.D. Mo. 1979) (classes of 40 or more are generally certified); *see* 5 James Wm. Moore et al., *Moore's Federal Practice*, § 23.22 (3d ed. 1999) (recognizing general rule that forty or more class members establishes numerosity).

### 2.      Rule 23(a)(2)—Commonality:

The commonality preconditions of Rule 23(a)(2) are "construed permissively." *See Hanlon v. Chrsyler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998). The presence of simply one common issue whose resolution will affect all or significant number of the putative class members suffices to satisfy the commonality requirement. *See James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir. 2001) (citations omitted); *Bittinger v. Tecumseh Prods. Co.*, 123

F.3d 877, 884 (6th Cir. 1997) (citation omitted); *see Vizcaino v. U.S. Dist. Court for W. Dist. of Wash.*, 173 F.3d 713, 722 (9th Cir. 1999) (defining a class of employees as linked by their common claim to have been denied benefits to which they were entitled as common law employees was proper) (citations omitted). Here, Plaintiffs allege Defendant implemented and applied employment policies and practices to all members of the Class—through written policies and procedures implemented consistently at all of its California facilities—and that the application of those policies systematically deprives members of the Class of lawful earnings. Thus, germane to all class members' claims are the common factual issues of (1) whether employees were provided compliant wage statements; (2) whether Defendant failed to pay members of the Class for overtime hours worked; (3) whether Defendant provided compliant meal and rest periods and (4) whether Defendant's uniform practices constituted unlawful business practices under California law. The corresponding legal questions concern whether such practices are lawful. *See Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 393 (W.D.N.Y. 2005). Plaintiffs' claims exceed the minimum burden of establishing commonality, by presenting several common legal and factual questions relating to Defendant's practices and policies. As such, commonality is satisfied.

### 3.     Rule 23(a)(3)—Typicality:

Under this Rule's "permissive standards," the representative plaintiffs' claims are "typical" if they are "reasonably co-extensive with those of absent class members." *Hanlon, supra,* 150 F.3d at 1020. The typicality requirement is satisfied if plaintiffs' claims arise from the same events or course of conduct that give rise to the claims of other class members and are based on the same legal theory. *See Ventura v. New York City Health and Hosp., Inc.*, 125 F.R.D. 595, 600 (S.D.N.Y. 1989). In the present case, all of Plaintiffs' claims arise from a common source—Defendant's uniform employment policies and practices.

Furthermore, the claims of the Plaintiffs and those of the putative Class are based on identical legal theories. Because Plaintiffs' claims rely on proving a course of conduct that extends beyond the circumstances unique to their claims, the Plaintiffs' interests are

22

aligned with those of the putative class. (Chrispens Decl., ¶ 14.; Henry Decl., ¶ 14.) Based on the foregoing, the typicality requirement is also satisfied.

### 4. Rule 23(a)(4)—Adequacy of Representation:

This Rule requires (1) that the representative plaintiffs do not have conflicts of interest with the putative class; and (2) that plaintiffs are represented by qualified and competent counsel. *See Hanlon, supra,* 150 F.3d at 1020. In this case, Plaintiffs and the putative Class alike seek relief against certain policies and practices of Defendant and are thus aligned in interest. (*Id*.) Plaintiffs' counsel are well-situated to assume the responsibilities of class counsel because they are experienced employment and class-action litigators who were fully qualified to pursue the interests of the class. (Beligan Decl., ¶¶ 3-7.)

### 5. Rule 23(b)(3)—Predominance and Superiority:

The predominance inquiry focuses on the relationship between the common and individual issues, testing whether the proposed classes are sufficiently cohesive to warrant adjudication by representation. *See Amchem Products, Inc. v.Windsor,* 521 U.S. 591, 623 (1997). As demonstrated above, the several questions of law and fact common to the Plaintiffs' claims and to those of the putative Class in this case represent significant aspects of this case and thus provide a clear justification for handling the dispute on a representative rather than on an individual basis. *Id*. Class treatment is also the superior method for resolving all claims in this case because a class action would (1) accomplish judicial economy by avoiding multiple suits, and (2) protect the rights of persons who might not be able to present claims on an individual basis. *See generally Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345 (1983). Furthermore, each class member's claim may not be large enough for separate litigation, so it is desirable to concentrate all claims in one proceeding. Plaintiffs further believe that it would be also in Defendant's best interests to resolve all claims for the Class Period in one proceeding to avoid the cost of multiple lawsuits. Plaintiffs are not aware of other pending similar lawsuits.

Thus, Plaintiffs contend that adjudication (and resolution by virtue of the proposed settlement) of these common issues, which represent significant aspects of this case, would serve to adjudicate (and resolve) substantially all of the issues affecting the entire Class. Plaintiffs' claims are part and parcel of the greater class claims, and based on the same factual predicates and legal theories. Based on the foregoing, Plaintiffs believe that the proposed Class satisfies the applicable Rule 23 certification requirements, and the parties respectfully request that the Court conditionally certify the class for settlement purposes.

## IX. SCHEDULING A FINAL APPROVAL HEARING IS APPROPRIATE.

The last step in the Settlement approval process is a final fairness hearing at which the Court may hear all evidence and argument necessary to make its Settlement evaluation. The Court will determine after the Final Approval Hearing whether the Settlement should be approved, and whether to enter a Final Approval Order and judgment under Rule 23(e). The Parties request that the Court set a date for a hearing on final approval.

## X. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval of the proposed Settlement, grant provisional certification of a class action under Rule 23 for settlement purposes only, appoint Plaintiffs as the California Named Representatives, appoint Plaintiffs' Attorneys as Class Counsel, approve as to form and order Notice to the proposed Participating California Class Members, appoint IYLM|Group, Inc. as the Claims Administrator, and set a final approval hearing date.

Date: October 18, 2017

Respectfully Submitted,
Plaintiffs

By: /s/ *Jerusalem F. Beligan*
Brian D. Chase (*pro hac vice* pending)
Jerusalem F. Beligan (admitted *pro hac vice*)

BISNAR CHASE LLP
1301 Dove Street, Suite 120
Newport Beach, CA 92660
Telephone: (949) 752-2999
Facsimile: (949) 752-2777
Email: bchase@bisnarchase.com
       jbeligan@bisnarchase.com

Branigan A. Robertson (admitted *pro hac vice*)
Branigan Robertson, Inc.
9891 Irvine Center Drive, Suite 200
Irvine, CA 92618
Telephone: (949) 275-7378
Email: branigan@brobertsonlaw.com

Michael L. Fradin
Law Office of Michael L. Fradin
8401 Crawford Avenue, Suite 104
Skokie, Illinois 60076
Telephone: (847) 664-3425
Facsimile: (847) 673-1228
Email: mike@fradinlaw.com

4834-3750-3825, v. 1